1  Michael C. Elmer (SBN 60366)
2  michael.elmer@finnegan.com
   FINNEGAN, HENDERSON, FARABOW,
3    GARRETT & DUNNER, L.L.P.
   2 Overlook Drive
4  Newport Beach, CA  92657
   Telephone:  (949) 715-5263
5  Facsimile:   (650) 849-6666

6  Robert F. McCauley (SBN 162056)
   robert.mccauley@finnegan.com
7  FINNEGAN, HENDERSON, FARABOW,
     GARRETT & DUNNER, L.L.P.
8  3300 Hillview Avenue
9  Palo Alto, CA  94304
   Telephone:  (650) 849-6600
10 Facsimile:   (650) 849-6666

11 Christopher P. Foley (not yet admitted *pro hac vice*)
12 christopher.foley@finnegan.com
   FINNEGAN, HENDERSON, FARABOW,
13   GARRETT & DUNNER, L.L.P.
   11955 Freedom Drive
14 Reston, VA  20190-5675
   Telephone:  (571) 203-4000
15 Facsimile:   (202) 408-4400

16 Attorneys for Defendant
17 MATTHEW LINDLAND and
   TEAM QUEST FIGHT CLUB, LLC

18           **UNITED STATES DISTRICT COURT**

19           **CENTRAL DISTRICT OF CALIFORNIA**

20                **(WESTERN DIVISION)**

21 DANIEL HENDERSON, an individual,      CASE NO. CV-11-01350 DDP-DTB

22           Plaintiff,                  **NOTICE OF AND MOTION TO
                                         DISMISS OR, IN THE
23      v.                               ALTERNATIVE, FOR SUMMARY
                                         JUDGMENT ON ALL COUNTS OF
24 MATTHEW LINDLAND, an individual,      PLAINTIFF'S COMPLAINT OF
   TEAM QUEST FIGHT CLUB, LLC, an        DEFENDANTS MATTHEW
25 Oregon limited liability company, and  LINDLAND AND TEAM QUEST
   DOES 1 through 10, inclusive,         FIGHT CLUB, LLC**
26
27           Defendants.                 Hearing Date:    June 13, 2011
                                         Time:            10:00 am
28                                       Courtroom:       3, 2nd floor
                                         Judge:           Hon. Dean D. Pregerson

                                 DEFENDANTS' MOTION TO DISMISS OR, IN THE
                                 ALTERNATIVE, FOR SUMMARY JUDGMENT
                                 Case No. CV-11-01350 DDP-DTB

# TABLE OF CONTENTS

NOTICE OF MOTION ............................................................................... 1

CONCISE STATEMENT OF RELIEF REQUESTED ........................... 1

I.   INTRODUCTION ............................................................ 1

II.  STATEMENT OF FACTS.................................................. 3

    A.   TQFC'S Business ............................................... 3

    B.   TQFC's Intellectual Property ................................ 8

    C.   Plaintiff's Misappropriation of TQFC's Intellectual Property ........... 10

III. ARGUMENT.................................................................... 11

    A.   Legal Standards Governing Motions to Dismiss and Summary Judgment .... 11

    B.   TQFC Owns the TEAM QUEST Name and Mark and the TEAM QUEST Logos ... 13

        1.   Henderson's Partner, Couture, Transferred His Interest in the TEAM QUEST Marks, including the Logo to TQFC ........ 13

        2.   TQFC Has Priority With Respect to the TEAM QUEST Name and Mark ... 14

        3.   TQFC's Prior Rights in the TEAM QUEST Marks Entitles It to Judgment as a Matter of Law On All of Henderson's  Trademark and Unfair Competition Claims ................. 17

            a.   TQFC Is Entitled to Judgment as a Matter of Law on Plaintiff's Trademark Infringement and Unfair Competition Claims........................ 17

            b.   TQFC is Entitled to Judgment as a Matter of Law on Henderson's Unfair Competition Under California Business and Professions Code § 17200 ... 18

    C,   Henderson is Barred by Laches, Acquiescence and Estoppel From Seeking to Enjoin TQFC's use of the TEAM QUEST Logos.......................... 19

IV.  CONCLUSION ................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. Circuit Breaker Corp. v. Or. Breakers, Inc.*,
   406 F.3d 577 (9th Cir. 2005) ............................................................... 16

*Asset Marketing Systems, Inc. v. Gagman*,
   542 F.3d ...................................................................................... 15, 20

*Balistreri v. Pacifica Police Dep't,*
   901 F.2d 696,699 (9th Cir. 1988) ........................................................ 13

*Bell Atlantic Corp. v. Twombly,*
   127 S. Ct. 1955 (2007)........................................................................ 12

*Buti v. Impressa Perosa S.R.L.*,
   139 F.3d 98 (2d Cir. 1998) .................................................................. 17

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1985)............................................................................ 13

*Cleary v. News Corp.*,
   30 F.3d 1255 (9th Cir. 1994) .............................................................. 19

*Clegg v. Cult Awareness Network*,
   18 F.3d 752 (9th Cir. 1994) ........................................................... 12, 13

*Corporate Document Services, Inc. v. ICE.D. Management, Inc.,*
   48 U.S.P.Q.2d 1477 (TTAB 1998)....................................................... 13

*DeCarlo v. Archie Comic Publ'ns, Inc.,*
   127 F. Supp. 2d 497 (S.D.N.Y. 2001), *aff'd* 11 F. App'x 28 (2d Cir. 2001) .....21

*Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*,
   448 F.3d 1118, 1125-26 (9th Cir. 2006)............................................... 16

*Emergency One, Inc. v. Am. Fire Eagle Engine Co.*,
   332 F.3d 264 (4th Cir. 2003) .............................................................. 19

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.,*
   132 F.3d 526, 629 (9th Cir. 1997) ....................................................... 13

*Experexchange, Inc. v. Doculex, Inc.,*
   2009 WL 3837275 (N.D. Cal. Nov. 16, 2009)....................................... 15

*Grupo Gigante S.A. de C.V. v Dallo & Co.*,
    391 F.3d 1088 (9th Cir. 2004) ....................................................... 17, 21

*Jarrow Formula v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002) .............................................................. 21

*Johnson & Johnson v. Diaz*,
    339 F.Supp. 60 (C.D. Cal. 1971) ........................................................ 16

*Keane Dealer Services, Inc. v. Harts*,
    968 F.Supp 944 (S.D.N.Y. 1997) ........................................................ 15

*Mayer v. Wedgewood Neighborhood Coalition*,
    707 F.2d 1020 (9th Cir. 1983) (per curiam) ........................................ 13

*North Star Int'l v. Arizona Corp. Comm'n*,
    720 F.2d 578,581 (9th Cir. 1983) ...................................................... 12

*Rockwood Chocolate Co. v. Hoffman Candy Co.*,
    372 F.2d 552 (C.C.P.A. 1967) ........................................................... 16

*Scott Paper Co. v. Scott's Liquid Gold, Inc.*,
    589 F.2d 1225 (3d Cir. 1978) ............................................................ 19

*Sengoku Works Ltd. v. RMC Int'l., Ltd.*,
    96 F.3d 1217 (9th Cir. 1996) ............................................................ 16

*United Drug Co. v. Theodore Rectanus Co.*,
    248 U.S. 90 (1918) .......................................................................... 18

*Walker & Zanger, Inc. v. Paragon Indus.*,
    465 F. Supp. 2d 956 (N.D. Cal. 2006) ................................................ 19

*Hornblower & Weeks, Inc. v. Hornblower & Weeks, Inc.*,
    60 U.S.P.Q.2d 1733 (TTAB 2001) ...................................................... 13

*Zuill v. Shanahan*,
    80 F.3d 1366 (9th Cir. 1996) ............................................................ 21

**OTHER STATUTES**

California Business and Professions Code § 17200 ..................................... 19, 20

**RULES**

Fed. R. Civ. P. 12(b)(1) ............................................................................. 2

DEFENDANTS' MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT
Case No. CV-11-01350 DDP-DTB

Fed. R. Civ. P. 12(b)(6), 12(c) ...................................................................2, 12, 13

Fed. R. Civ. P. 56 ...................................................................................................2

Fed. R. Civ. P. 56(c) ...........................................................................................13

**NON-TOA REFERENCES**

Compliant, Exhibit 1 .......................................................................................13, 14

Complaint, paragraph 1 .......................................................................................11

Complaint, paragraph 24 .....................................................................................11

Exhibit 1 ........................................................................................................passim

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:  PLEASE TAKE NOTICE that on June 13, 2011, or as soon thereafter as counsel may be heard, Defendants Matthew Lindland and Team Quest Fight Club, LLC ("TQFC" or "Defendants") will and hereby does move the Court, pursuant to Fed. R. Civ. P. 12(b)(6), 12(c), and/or 56, to dismiss the Complaint filed by Plaintiff.  Pursuant to Local Rule 7-3, counsel for Defendants contacted Plaintiff's counsel on April 27, 2011 and discussed the substance of the Motion.

This motion is based on this Notice and supporting Memorandum of Points and Authorities, the Supporting Declaration(s) of Angela Lindland, Robert Follis, and Valerie E. Wright and all exhibits thereto, all opposition and reply papers thereto, the argument of counsel, the court's entire file, and any other evidence that may be presented at the hearing on this matter.

**CONCISE STATEMENT OF RELIEF REQUESTED**

Defendants respectfully request that the Court issue an order pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(c) dismissing Plaintiff's Complaint for failure to state a claim upon which relief may be granted.  In the alternative, Defendants respectfully request that this Court issue an order pursuant to Fed. R. Civ. P. 56 dismissing Plaintiff's Complaint because there are no issues of material fact and Defendants are entitled to judgment as a matter of law on all Plaintiff's claims.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Either through a misconception of the governing law or relevant facts, Plaintiff Henderson has filed a Complaint that is wholly without merit. Incontrovertible evidence conclusively establishes that it is Defendant TQFC, and not Henderson, that owns the trademark, service mark, and trade name rights in TEAM QUEST and the

TEAM QUEST logo.[1]  In turn, it is Henderson that has infringed TQFC's intellectual property rights by using an imitation of the distinctive TEAM QUEST logos and the confusingly similar names TEAM QUEST and TEAM QUEST MMA FITNESS, as well as appropriating other names and identifiers which are confusingly similar to ones Defendant has used for several years in the United States long before Henderson's gym even existed as a business (the marks and logos are collectively referred to as "TEAM QUEST" marks).

Henderson appears to base his entire case on three points.  First, Henderson believes that he is the senior user of the TEAM QUEST marks because he and Randy Couture allegedly had the idea of using a clenched fist design and the name "Team Quest" for a wrestling team before Defendants.  Henderson's first point ignores the fact that Couture transferred all interest in the clenched fist design and the TEAM QUEST marks to TQFC in 2006.  Secondly, Henderson maintains that he has priority with respect to the TEAM QUEST marks over Lindland and TQFC.  Henderson's argument ignores a fundamental precept of American trademark law that rights accrue through use, and that use must be in the United States.  Finally, Henderson believes he can sit back for a decade and watch TQFC establish a brand, and then he can acquire a copyright and concoct a plan to steal TQFC's brand.  This approach ignores the fact TQFC has an irrevocable license in the copyright.  Henderson's misguided approach also ignores another fundamental precept of American jurisprudence that it is inequitable to lie in the weeds for years only to pounce on the prize once it becomes valuable.  For these reasons, Plaintiff's claims are not supportable as a matter of law.

Accordingly, the Court, either on the strength of the papers alone or in conjunction with the accompanying declarations and evidence, should dismiss Plaintiff's Complaint in its entirety.

---

[1] *See* Defendant's Answer, Defenses, and Counterclaims, filed concurrently with this Motion ("Answer"), ¶ 27.  In addition to the logo in Exhibit 1 of the Complaint, TQFC has developed derivative logos shown in paragraph 33 of the Answer.

## II.    STATEMENT OF FACTS

### A.    TQFC'S Business

After winning the Silver Medal in wrestling for the United States in the 2000 Summer Olympic Games in Sydney, Australia, Matt Lindland returned to his family in their hometown of Portland, Oregon in September 2000.  While Lindland was participating in the Olympics, his long-time wrestling friends, Counterclaim Defendant Henderson and Randy Couture, operated an exercise gym in Portland under the name, Performance Quest.  Their gym was not making any money and they did not know how to save it, so they closed it around the time Lindland was returning from the Olympics and sold their equipment.[2]  (See Wright Decl., ¶ 16, Ex. H).

When he was not wrestling, Lindland operated a car dealership in the Portland suburb of Gresham.  His car dealership included a separate metal-framed warehouse. Upon his return from the Olympics, he purchased some of the exercise equipment being sold by Henderson and Couture to use in his warehouse.  Lindland modified the warehouse into a gym, which he encouraged his friends to use, at no cost, to train. (See Wright Decl., ¶ 20, Ex. I).

Henderson decided not to stay in Portland after his exercise gym failed.  He moved instead to Southern California.  In an interview in 2009 for a mixed martial arts (MMA) publication, *Don't Blink Magazine*, he explained that after his exercise gym failed, he spent the next three or four years training out of a high school gym in Southern California.  That was a good arrangement for him because "[He] didn't have to worry about bills or numbers and classes and everything else."  (See Wright Decl., ¶ 24, Ex. J).

About the time Henderson left Portland, the three agreed to be a team and to assist each other at MMA fights.  They called themselves TEAM QUEST, and planned to have T-shirts made with the TEAM QUEST name and a clenched fist

---

[2] According to records of the Oregon Secretary of State, Performance Quest was dissolved in September 2001.

DEFENDANTS' MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT
Case No. CV-11-01350 DDP-DTB

1   design, the same design Henderson and Couture previously used with the

2   RINGMASTER name on T-shirts at fights in Japan.(See Wright Decl., ¶ 2, Ex. A)

3   From the Fall of 2000 through the Fall of 2006, Henderson fought in professional

4   MMA fights in Japan for RING and PRIDE organizations.  (See Follis Decl., ¶ 3, Ex.

5   A).  He averaged three professional fights a year, all of which were in Japan.[3]

6        In the meantime, Lindland and his wife, Angie, decided in early 2001 to use

7   their make-shift gym in Gresham, Oregon, to provide a wrestling program for kids.

8   They formed a non-profit corporation under the name TEAM QUEST WRESTLING

9   that was registered in Oregon in April 2001 and began doing business immediately.

10  (See Lindland Decl., ¶ 2, Ex. A).  The TEAM QUEST wrestling club catered to

11  families in the Oregon and Washington State towns near Portland.

12       Operating a non-profit wrestling club had costs, such as trainers, insurance,

13  branded T-shirts, wrestling cards and phone charges.  All of these expenses were paid

14  by Lindland on TEAM QUEST checks.  (See Lindland Decl., ¶ 3, Ex. B).  Neither

15  Henderson nor Couture owned or assisted in the operation of the TEAM QUEST

16  wrestling club.  While Henderson and Couture knew about Lindland's wrestling

17  program, neither of them objected to his use of the TEAM QUEST name.

18       Not long after starting the TEAM QUEST wrestling club, Lindland developed

19  plans to create a MMA training facility out of their Gresham, Oregon gym.  They

20  discussed these plans with Couture and Henderson, but Henderson preferred to remain

21  in Southern California and devote his attention to training for his occasional fights in

22  Japan.  In June 2001, Lindland took initial steps toward making his MMA facility,

23  which they called TEAM QUEST FIGHT CLUB (TQFC), a reality.  They paid to

24  have a website designed and paid Couture to register the domain name TQFC.com.

25  (See Lindland Decl., ¶ 4, Ex.C).  In September 2001, TQFC purchased signage

26

27  [3] Since T-shirts are not worn during the fights, to the extent any fights were broadcast or videotaped,
    the TEAM QUEST name and logo were rarely, if ever, visible.  Further, fights in Japan are reported

28  to the public in Japanese.

4

featuring the TEAM QUEST name and mark and the TEAM QUEST logo.  The signage was displayed near the entrance to the gym displaying the TEAM QUEST name and the clenched fist design, which is referred to as the TEAM QUEST logo. (See Lindland Decl., ¶ 5, Ex. D).  By April 2002, Lindland had also paid for advertising and opened a merchant's account under the TEAM QUEST name through Wells Fargo Bank.  In October 2002, the Lindlands registered TEAM QUEST FIGHT CLUB LLC with the State of Oregon and they replaced wrestling with a MMA program at their Gresham, Oregon, facility.[4]  (See Lindland Decl., ¶ 6, Ex. E).

Couture and his former trainer, Robert Follis, became owners of TQFC along with Matt Lindland.  (See Follis Decl., ¶ 8, Ex. E).  In the early years, Follis trained, was involved in the day-to-day operations of the gym, and with Willow Ryan coordinated purchases and sales of TEAM QUEST merchandise, (see Follis Decl., ¶ 4) and Lindland and Couture provided instruction with Follis while also using their contacts to increase the visibility of the TEAM QUEST brand within the local, national and international MMA community.  Interest and participation in the TEAM QUEST MMA program grew quickly in MMA circles.  By 2004, fighters from around the country and around the world were aware of the TEAM QUEST training facility and many, including Henderson, had come to Gresham for periods of time to train. (See Follis Decl., ¶ 6, Ex. C).  Eventually, TQFC refurbished the TEAM QUEST facility into a top-flight MMA training center.  The TEAM QUEST name and mark and the TEAM QUEST logos have always been prominently displayed on signage at the TQFC gym, in its promotional material, on its website and on its merchandise.  As such, the TEAM QUEST marks have become an integral component to TQFC's image.

In 2004, in an attempt to further broaden the base of TQFC's membership, TQFC adopted the name TEAM QUEST MARTIAL ARTS & FITNESS, for basic

---

[4] TEAM QUEST FIGHT CLUB LLC has been registered as an Oregon business from 2002 to the present.

1   training and fitness activities (see Follis Decl., ¶ 7, Ex. D), while retaining the TEAM

2   QUEST FIGHT CLUB name for use in connection with competitive martial arts

3   events, mini-camps and sponsorships.  In subsequent years, TQFC adopted and

4   registered other corporate entities to assist in managing the business activities

5   operating under the TEAM QUEST name.  These entities include TEAM QUEST

6   HOLDINGS LLC, TEAM QUEST PRODUCTIONS LLC and TEAM QUEST

7   MANAGEMENT LLC.  (See Wright Decl., ¶ 3, Ex. B).

8          In 2006, TQFC expanded its business to include franchising.  In March 2006,

9   Henderson was authorized by TQFC to open a gym at Temecula, California.

10  Additional licensed gyms, which were licensed by others, followed at Tualatin

11  (Oregon), Redding (California), West Linn (Oregon ), and most recently at Oceanside

12  (California).  At Temecula, like the other gyms, TQFC provided, at its own expense,

13  advice and assistance in conducting MMA instruction and setting up training

14  programs consistent with TQFC's expectations for quality.  TQFC also offered

15  promotional material and guidance with respect to use of the TEAM QUEST name

16  and mark and the TEAM QUEST logo.  Henderson was also permitted to link directly

17  to TQFC's website, TQFC.com, so that Henderson's customers had immediate access

18  to TEAM QUEST events and other MMA activities.  (See Follis Decl., ¶ 12, Ex. G).

19  TQFC spent years and considerable expense developing its training programs, its

20  promotional materials and its website.  TQFC also covered, at its own expense, the

21  legal and administrative expenses associated with protecting TQFC's marks in other

22  countries and sublicensing TQFC's mark, at Henderson's  request.  TQFC's actions

23  on behalf of Henderson further establish Henderson's recognition of TQFC's

24  ownership and control of the TEAM QUEST marks.

25         In March 2006, Couture left TQFC to explore other business opportunities.

26  When he left, Couture transferred all of his interest in TQFC back to TQFC.  (See

27  Follis Decl., ¶ 9, Ex. F).  Follis eventually sold all of his interest in TQFC to Lindland,

28

6

1   but remained with TQFC as a consultant.  (See Follis Decl., ¶ 14, Ex. H).

2   Accordingly, Lindland presently is the sole owner of TQFC.

3          Until TQFC agreed to Henderson's proposal to operate a TEAM QUEST gym

4   in Temecula, Henderson's involvement with TQFC's TEAM QUEST business was

5   nominal and none of his activities provided him with rights in the TEAM QUEST

6   name and mark and the TEAM QUEST logos.  He traveled to Gresham typically to

7   train before fights, when he would occasionally stay at the Lindlands' home.  (See

8   Lindland Decl., ¶ 8).  He also visited TQFC licensed gyms for promotions and special

9   training once in a while, and TQFC featured his participation on its website.  He also

10  had limited involvement in TQFC's sale of collateral merchandise.  In return, TQFC

11  paid Henderson's expenses for his trips for TQFC events and also compensated him

12  with a percentage of the online merchandise TQFC sold.

13         With respect to collateral merchandise, Henderson requested in 2002 that TQFC

14  allow him to assist in online sales of TEAM QUEST merchandise.  This amounted to

15  adding a shopping icon to the website available at www.danhenderson.com and

16  linking to a Yahoo! account paid for by TQFC featuring branded goods obtained by

17  TQFC.  (See Follis Decl., ¶ 5, Ex. B).  This merchandising experiment with

18  Henderson, which started in April 2002, was short-lived, as TQFC quickly lost money

19  from Henderson's unsuccessful efforts to sell merchandise.  Several years later, TQFC

20  agreed to use Clinchgear, an athletic wear business in which Henderson had an

21  interest, for a period of time to sell products branded with the TEAM QUEST name

22  and mark and the TEAM QUEST logo.  The quality of Clinchgear's products and

23  services did not meet TQFC's expectations and the relationship with Clinchgear was

24  also terminated by TQFC.

25         Lindland and Couture had been long-time wrestling friends with Henderson,

26  and they referred to him as a founder in reference to his participation with them in

27  coming up with the name TEAM QUEST.  Lindland, who assisted ("cornered for")

28  Henderson at many of his fights over the years, encouraged him to become an owner

7

in the business.  Henderson was not interested.  Indeed, he never contributed financially to TQFC and never wanted to devote the time, money and energy required to run the business and build the brand.  The risks and investments undertaken solely by the Lindlands and TQFC built the TEAM QUEST brand.

**B.     TQFC's Intellectual Property**

Contrary to the representations in Plaintiff's Complaint, it is TQFC that owns all right, title, and interest in the common law and registered trademarks, service marks, and trade names TEAM QUEST, TEAM QUEST MARTIAL ARTS AND FITNESS and the TEAM QUEST logos as described herein for MMA, wrestling, fitness, MMA training, a wide range of athletic wear and related licensing.

Since as early as April 2001, TQFC has continuously used the TEAM QUEST name and mark and the TEAM QUEST logo in interstate commerce in connection with wrestling and MMA instruction, fitness and related merchandising and licensing. (See Wright Decl., ¶ 5, Ex. C)  In addition to its common law rights, to protect the valuable goodwill associated with the TEAM QUEST name and the TEAM QUEST logo, TQFC filed applications and eventually obtained several federal trademark registrations including U.S. Trademark Registration Nos. 3090065, 3085376, 3736030 and 3736031.  (See Wright Decl., ¶ 6, Ex. D)  With respect to the TEAM QUEST name and mark, TQFC's registrations include:

- Registration No. 385376 for "martial arts instruction."  The application, which led to this registration, was filed on May 11, 2005 and alleged a date of first use of June 1, 2004 (a date which can be antedated);

- Registration No. 3736030 for "Athletic clothing, namely, shirts, shorts, tank tops, warm-up suits, sweat suits, pullovers, hoods, jerseys, underarm clothing shields, wraps, pants, jackets, posing trunks, swimwear, sleepwear, underwear, socks, sweatbands, hats, shoes, towels, athletic uniforms, clothing for wear in martial arts practices and martial arts uniforms."  The application, which led to this registration, was filed on December 24, 2008 and alleged a date of first use of May 5, 2001 (a date which can be antedated); and

- Registration No. 3736031 for "Athletic instruction, namely, instruction in boxing, kickboxing, wrestling, martial arts, mixed martial arts and relaxed sports and combat athletic skills; personal training services for athletes, namely, strength and conditioning training; sport camps; gymnasiums; providing exercise and fitness facilities; providing instruction in exercise and fitness; organizing exhibitions for sporting or entertainment purposes; entertainment services in the nature of participating in athletic events, namely, events relating to combat athletics, boxing, wrestling, kickboxing, martial arts and mixed martial arts." The application, which led to this registration, was filed on December 24, 2008 and alleged a date of first use of December 1, 2003 (a date which can be antedated).

With respect to the TEAM QUEST logo, TQFC has obtained Registration No. 3090065 for "martial arts instruction" for the following design:



The application, which led to this registration, was filed on May 17, 2005 and alleged a date of first use of June 1, 2004 (a date which can be antedated).

TQFC also used the TEAM QUEST logo shown in Exhibit A of the Complaint. In addition, TQFC created another derivative logo, as shown below, which TQFC has used for at least five (5) years on its websites and materials offering TQFC's goods and services:



The federal trademark registrations identified above are *prima facie* evidence of TQFC's ownership of the marks set forth in the registrations and TQFC's exclusive right to use those marks.

9

### C.    Plaintiff's Misappropriation of TQFC's Intellectual Property

Long after Counterclaim Plaintiff TQFC adopted the TEAM QUEST name and mark and the TEAM QUEST logo for wrestling and MMA instruction, fitness and related merchandising, Henderson requested a license to use these marks for a California gym, and TQFC consented to this request.  He also requested the right to license others, but TQFC refused that request.  Henderson's licensed gym began doing business in 2006.

It is TQFC's understanding that Henderson recently purportedly authorized a gym in Encinitas, California and another in San Jacinto, California (collectively the "Infringing Encinitas and San Jacinto Facilities") to use the TEAM QUEST name and mark, the TEAM QUEST logo and various related domain names in connection with martial arts instruction and the sale and distribution of branded merchandise.  (See McKendry Decl., ¶ 3, Ex. A; ¶ 4, Ex. B).  Accordingly, TQFC notified Henderson that his license would be rescinded as of March 1, 2011, unless he agreed to execute an agreement withdrawing his authorization to these gyms.  (See Wright Decl., ¶ 7, Ex. E).  Henderson has not agreed to this undertaking, and his Temecula gym continues to use the TEAM QUEST name and the TEAM QUEST logo.  The uses of these marks by Henderson's gym and Henderson's affiliates is in direct competition with TQFC.

It is also TQFC's understanding that Henderson himself or his employees have encouraged TQFC's licensee in Oceanside, California to breach its agreement with TQFC with respect to the TEAM QUEST name and mark and the TEAM QUEST logo.  (See McKendry Decl., ¶ 5).

Henderson's use and his purported authorization to others to use the TEAM QUEST name and mark and the TEAM QUEST logo have caused actual confusion in the market for the parties' products and services.

TQFC further understands that in December 2010, Henderson's attorneys contacted Tom McGee, who twelve years ago purportedly created the clenched fist design in Exhibit 1 of the Complaint for a couple hundred dollars.  Apparently,

DEFENDANTS' MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT
Case No. CV-11-01350 DDP-DTB

Henderson's attorneys obtained an assignment of the copyright in the design from McGee to assert against TQFC.  Upon information and belief, Henderson had not been in contact with McGee since the design was created for the RINGMASTER brand in the late 1990's.

On February 15, 2011, one of Henderson's attorneys sent Lindland a letter asserting Henderson owned the TEAM QUEST trademarks and a copyright in the TEAM QUEST logo.  In other words, 10 years after Lindland began using the marks, and 5 years after Lindland put Henderson in business under the TEAM QUEST marks, Henderson maintained the marks were his.

## III.    ARGUMENT

### A.    Legal Standards Governing Motions to Dismiss and Summary Judgment

Dismissal is appropriate under Rule 12(b)(6) when plaintiff's allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the allegations in the complaint. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578,581 (9th Cir. 1983).  To survive a 12(b)(6) motion, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007).  The court is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain,* 478 U.S. 265,286 (1986)).

A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is the proper means to challenge the sufficiency of a complaint, or claims therein, after the filing of an answer. The standard by which a district court must determine Rule 12(c) motions is the same as that applied pursuant to Fed. R. Civ. P. 12(b)(6). "A district court will render a judgment on the pleadings when the moving party clearly establishes on the face of the pleadings that no material

11

issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.,* 132 F.3d 526, 629 (9th Cir. 1997) (citation omitted); *see also Balistreri v. Pacifica Police Dep't,* 901 F.2d 696,699 (9th Cir. 1988) (motion to dismiss is proper where complaint reflects either the lack of a cognizable legal theory or the absence of sufficient facts to support a cognizable claim). Although a court applying Fed. R. Civ. P. 12(c) must presume the truth of the factual allegations asserted and draw all reasonable inferences in favor of the non-moving party, a court is not required to accept conclusory allegations of law and unwarranted inferences of fact. *See Clegg,* 18 F.3d at 754-55.

In the alternative, summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter o flaw. Fed. R. Civ. P. 56(c).  *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1985). "A motion under Federal Rule of Civil Procedure 12(b)(6) or 12(c) may be treated as a motion for summary judgment only if the court affords all parties reasonable notice." *Mayer v. Wedgewood Neighborhood Coalition,* 707 F.2d 1020, 1021 (9th Cir. 1983) (per curiam). And, in that respect, it is important to note that the question of priority, which is what Henderson has put at issue, can be properly resolved on summary judgment. *See Hornblower & Weeks, Inc. v. Hornblower & Weeks, Inc.,* 60 U.S.P.Q.2d 1733 (TTAB 2001); *Corporate Document Services, Inc. v. ICE.D. Management, Inc.,* 48 U.S.P.Q.2d 1477 (TTAB 1998).

Under any of these standards, Henderson's claims fail as a matter of law.  His Complaint alleges that his intellectual property is infringed by TQFC's use of TEAM QUEST and the TEAM QUEST logo.  As explained below, Henderson's Complaint must be dismissed because, even accepting Plaintiff's arguments, TQFC owns the allegedly infringing marks, and it has an <u>irrevocable</u> <u>license</u> under the copyright for the TEAM QUEST logo.  Furthermore, Henderson's conclusory allegations regarding priority of use are inconsistent with his own activities and his own admissions. Moreover, TQFC's use has also been ongoing for 10+ years, long before TQFC

1    authorized Henderson to open his California gym.  Henderson has not only known

2    about the use but has relied on TQFC's assistance to make his licensed use a success.

3    For these reasons, the Court should dismiss Henderson's Complaint in its entirety.

4    **B.    TQFC Owns the TEAM QUEST Name and Mark and the TEAM QUEST Logos**

5

6    **1.    Henderson's Partner, Couture, Transferred His Interest in the TEAM QUEST Marks, including the Logo to TQFC**

7          Henderson maintains that he and Randy Couture had been using the TEAM

8    QUEST name and the TEAM QUEST logo as shown in Exhibit 1 of the Complaint, in

9    1999, one year before Lindland and three years before TQFC.  Complaint,

10   paragraph 24.  He also represents that he was a partner with Randy Couture when they

11   commissioned an artist to design the artwork reflected in Exhibit 1.  Henderson further

12   asserts that their use involved MMA training, MMA fighting entertainment and

13   related apparel.  (Complaint ¶ 1.)  As such, Henderson asserts that he and Couture are

14   senior users of these trademarks and also authorized to use the artwork under the

15   copyright laws.

16         Henderson acknowledged in his Complaint that Couture and Lindland became

17   owners of TQFC, which he says began using the TEAM QUEST marks in 2001.  Over

18   the next five years, TQFC grew from a wrestling club for kids in Portland and nearby

19   Washington State into a MMA training center drawing participants from around the

20   country, as well as internationally.  The TEAM QUEST name and trademark and

21   TQFC's logos have been prominently featured on TQFC's website and its apparel

22   since 2001.  To protect the growing recognition of its brand, TQFC obtained federal

23   trademark registrations to complement its expanding common law rights in the TEAM

24   QUEST marks with respect to MMA instruction, fitness, athletic apparel and

25   licensing.

26         Couture eventually left TQFC, effective April 25, 2006, to pursue other

27   business interests.  When he left, he transferred all of his interest in the company back

28   to TQFC. (See Follis Decl., ¶ 9, Ex. F)  Accordingly, all intellectual property rights

13

Couture had in the TEAM QUEST name and TEAM QUEST logo, including rights as senior user and in the artwork, were transferred to TQFC.  Therefore, even accepting Henderson's claim that he and Couture were senior users of the TEAM QUEST marks, TQFC stands in Couture's shoes.  Therefore, Henderson's trademark claims must fail.

Similarly, Henderson's copyright claim lacks merit.  In a nutshell, he maintains that McGee (the artist) expressly created the clinched fist logo (Exhibit 1 of the Complaint) that he and Couture requested and paid for, and the artist then handed it over to them intending for it to be copied.  Under those circumstances, Couture had an implied license to use the artist's original work that is irrevocable.  *Asset Marketing Systems, Inc. v. Gagman*, 542 F.3d. 748, 754-759 (9th Cir. 2008).  TQFC subsequently made derivatives of the original work and Henderson was well aware of and also used these derivative logos as a TQFC licensee.  Couture transferred his irrevocable license to use the allegedly copyrighted logo (Complaint, Ex. A) to TQFC when he left the company in 2006.

TQFC continued to use its derivative logos, as did Henderson, so he should not now be heard to complain.  *See, e.g., Experexchange, Inc. v. Doculex, Inc.*, 2009 WL 3837275 (N.D. Cal. Nov. 16, 2009) (plaintiff was aware that defendants created a derivative work and did not complain until just prior to litigation; summary judgment granted for defendants); and *Keane Dealer Services, Inc. v. Harts*, 968 F.Supp 944 (S.D.N.Y. 1997) (plaintiff's knowledge of and acquiescence in defendant's use of plaintiff's copyrighted work constituted an implied license warranting summary judgment for the plaintiff).

Accordingly, Henderson's Complaint must be dismissed as he has no valid claim against TQFC's continued use of the intellectual property at issue in this case.

### 2.    TQFC Has Priority With Respect to the TEAM QUEST Name and Mark

Under the trademark laws, "[t]o acquire ownership of a trademark it is not enough to have invented to the mark first…the party claiming ownership must have

been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l., Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996).[5]  To demonstrate priority of use, Henderson must prove (1) that he actually adopted and used the TEAM QUEST marks in connection prior to TQFC in such a manner that sufficiently associated the marks with Henderson's provision of MMA instruction, athletic training and athletic clothing, and (2) that his use of the marks was continuous and not interrupted." *Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc*., 448 F.3d 1118, 1125-26 (9th Cir. 2006) (citations omitted).

Use outside the United States, however, cannot establish use or priority within the United States.  *See Johnson & Johnson v. Diaz*, 339 F.Supp. 60, 64 (C.D. Cal. 1971) ("Plaintiff correctly argues… that prior use of a trademark in a foreign country does not entitle its owner to claim exclusive trademark rights in the United States….").[7]  *See Am. Circuit Breaker Corp. v. Or. Breakers, Inc.*, 406 F.3d 577, 581 (9th Cir 2005) (noting the general acceptance of the principle of territoriality in trademark law).  "[P]riority of trademark rights in the United States depends solely upon priority of use in the United States, not on priority of use anywhere in the world." *Grupo Gigante S.A. de C.V. v Dallo & Co.*, 391 F.3d 1088, 1093 (9th Cir.

---

[5] By the same token, because of the significance of use in establishing ownership, the owner of a trademark registration can establish earlier dates of first use than set forth in the registration.  *See, e.g., Rockwood Chocolate Co. v. Hoffman Candy Co.*, 372 F.2d 552, 554 (C.C.P.A. 1967).

[6] The analysis of these issues is the same whether Defendant's marks are cast as trademarks, service marks, or trade names.  The Ninth Circuit has held, "[t]rade name infringement … is based on considerations similar to trademark infringement" and both "preclude one from using another's distinctive mark or name if it will cause a likelihood of confusion or deception as to the origin of the goods."  *New West Enterprises, Inc. v. NYM Co.*, 595 F.2d 1194, 1201 (9th Cir. 1979).  Similarly, "service marks and trademarks are governed by identical standards and thus like with trademarks, common law rights are acquired in a service mark by adopting an using the mark in connection with services rendered."  *Chance v. Pac-Tel Teletrac, Inc.*, 242 F.3d 1151, 1156 (9th Cir. 2001) (citations omitted).

[7] This principle of territoriality, which is basic to American trademark law, recognizes that: a trademark has a separate legal significance under each country's laws, and that its proper function is not necessarily to specify the origin or manufacture of a good (although it may incidentally do that), but rather to symbolize the *domestic goodwill of the domestic markholder* so that the consuming public may rely with an expectation of consistency of the domestic reputation earned for the mark by its owner, and the owner of the mark may be confident that his goodwill and reputation (the value of the mark) will not be injured through use of the mark by others in *domestic* commerce.

2004) (quoting J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §29:2, at 29-6 (4th ed. 2002)).

Moreover, when services are offered only outside of the United States, the promotion of those services within the United States does not give rise to U.S. trademark rights. *See Buti v. Impressa Perosa S.R.L.*, 139 F.3d 98, 103 (2d Cir. 1998) (finding that the Defendant's advertising activities in the United States were "insufficient to establish 'use in commerce' of the Fashion Cafe name").

Henderson's Complaint offers only conclusory allegations about his alleged use of the TEAM QUEST marks. Significantly, by his own admission, after his exercise gym failed, he spent three or four years training out of a high school gym in preparation for two to three fights a year in Japan. Under this arrangement, "[H]e didn't have to worry about bills or numbers and classes and everything else." As explained, his fights outside the United States do not constitute use in the United States. And, the promotion of those services in the United States also does not give rise to trademark rights in the United States. *See Buti v. Impressa Perosa S.R.L.*

In contrast, as set forth in the accompanying Declarations, during the three to four years Henderson was training at the California high school, Lindland had used the TEAM QUEST marks extensively in interstate commerce for athletic instruction, including MMA training, wrestling and fitness, as well as online and retail sales of branded apparel. TQFC has continuously used the TEAM QUEST marks for these services and related products to the present day. In fact, a search of the archives for TQFC's website reveals long and continuous use of the TEAM QUEST marks by Defendants from 2001 to the present in connection with offering and promoting TQFC's services to the public nationwide. This unimpeachable evidence conclusively establishes TQFC's priority in the TEAM QUEST marks.

Furthermore, TQFC owns federal registrations, which are *prima facie* evidence of its ownership of the TEAM QUEST name and mark and the TEAM QUEST logo. Significantly, at no time has Henderson contributed financially to the goods and

services offered by TQFC under the TEAM QUEST marks.  Nor has he provided any assistance in obtaining, maintaining or protecting the TEAM QUEST marks.  Nothing in Henderson's Complaint suggests to the contrary.

Henderson's conclusory allegations lack sufficient credible facts to support his claim that he used the TEAM QUEST marks in the United States either before the date of first use alleged by TQFC in its registrations, or before the earlier dates of first use established by TQFC in support of this Motion to Dismiss.

In view of the foregoing, Henderson cannot establish use of the TEAM QUEST marks prior to Defendants, as a matter of law.  Therefore, the trademark claims should be dismissed on this basis alone.

### 3. TQFC's Prior Rights in the TEAM QUEST Marks Entitles It to Judgment as a Matter of Law On All of Henderson's Trademark and Unfair Competition Claims

There is no dispute in this case that the parties' marks and names are likely to be confused by consumers and that the parties are direct competitors.  The only issue then is which party has priority.  For the reasons explained above, Defendants have demonstrated their priority of ownership of the allegedly infringing marks through clear and conclusive evidence.  Therefore, Plaintiff's claims cannot be successful as a matter of law.

#### a. TQFC Is Entitled to Judgment as a Matter of Law on Plaintiff's Trademark Infringement and Unfair Competition Claims

Where a Defendant shows priority of use through common law rights in the allegedly infringing marks, a Plaintiff cannot succeed on its claim for trademark infringement.  *See, United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 110 (1918) ("Undoubtedly, the general rule is that, as between conflicting claimants to the right to use the same mark, priority of appropriation determines the question.").

Relying on case law from the Supreme Court, the Ninth Circuit, and the Sixth Circuit, the Fourth Circuit has helpfully summarized the law:

> To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the

17

> party claiming ownership must have been the first to actually use the mark in the sale of goods or services." The owner of a mark acquires "both the right to use a particular mark and the right to prevent others from using the same or a confusingly similar mark." Accordingly, trademark ownership confers an exclusive right to use the mark.

*Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, at 267, n.1 (4th Cir. 2003) (citations omitted).

Since TQFC was entitled to the exclusive use of its TEAM QUEST marks upon its acquisition of common law ownership as early as 2001, it clearly cannot have infringed any intellectual property rights purportedly held by Plaintiff. *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1231 (3d Cir. 1978) (". . . relief is only available if the plaintiff establishes priority . . .").

### b. TQFC is Entitled to Judgment as a Matter of Law on Henderson's Unfair Competition Under California Business and Professions Code § 17200

As Henderson cannot maintain his federal statutory claims, his state statutory unfair competition claim must likewise fail. In *Cleary v. News Corp.*, 30 F.3d 1255, 1262-1263 (9th Cir. 1994), the district court granted summary judgment for defendants on plaintiffs' Lanham Act claim, and then granted summary judgment for defendant on Plaintiffs' claim for unfair competition pursuant to California Business & Professions Code § 17200. The court of appeals affirmed, noting that the Ninth "Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are substantially congruent to claims made under the Lanham Act." *Id.* At 1262-1263; *see also Walker & Zanger, Inc. v. Paragon Indus.*, 465 F. Supp. 2d 956, 970 (N.D. Cal. 2006) ("In the Ninth Circuit, claims of unfair competition and false advertising under state statutory and common law are 'substantially congruent' to claims made under the Lanham Act.") (citation omitted). For the same reasons, Henderson's claim under §17200 should be dismissed here as well.

18

**C,**  **Henderson is Barred by Laches, Acquiescence and Estoppel From Seeking to Enjoin TQFC's use of the TEAM QUEST Logos**

As a matter of law, Henderson's copyright claim should be dismissed for laches, acquiescence and estoppel.  It is unconscionable that Henderson stood on the side lines with no skin in the game while his friends at TQFC nurtured and expanded the TEAM QUEST brand for the last ten years.  Then, after their efforts proved successful, he is now maneuvering to undercut TQFC's investment by filing the Complaint in this case.

As explained in III.B.1., TQFC had an implied license to use McGee's original work (Complaint, Ex. A) that was irrevocable.  *Asset Marketing Systems, Inc. v. Gagman*, 542 F.3d at 754-757.  TQFC subsequently made derivatives of the original work that TQFC prominently featured on its website, on other promotional material and on its licensed apparel.  Henderson was well aware of TQFC's use of the TEAM QUEST logos, as he used the original design and the derivative works as a TQFC licensee.  Accordingly, Henderson is barred on principles of laches, acquiescence and estoppel from seeking to enjoin TQFC's use of its derivative logos.

The *Keane Dealer* case, which is referenced in III.B.1, is instructive.  In that case, Smith Barney acquired assets from Shearson Lehman Brothers ("Lehman") that unintentionally included software developed at Lehman Brothers.  Smith Barney used the software unaware it was not intended to be transferred, and subsequently contacted Lehman about its use.  Two years later, Lehman Brothers assigned the copyright in the software to KDSI, a company operated by an individual who was at Lehman Brothers when the software was developed.  KDSI registered the copyright and instituted an action against Smith Barney.  The court, in granting summary judgment for defendant Smith Barney, held that KDSI was equitably stopped from bringing the infringement

1  action because Smith Barney had detrimentally relied on Lehman's inaction.[8]  968

2  F.Supp at 947-8.  It is respectfully submitted this Court should hold similarly.

3        Moreover, Henderson's Complaint should be summarily dismissed for delay

4  alone.  The Ninth Circuit has upheld the application of laches in trademark cases

5  barring both damages <u>and</u> injunctive relief for periods of delay much shorter than

6  Henderson's delay.  In *Grupo Gigante*, 391 F.3d at 1105 (appeal from C.D. Cal), the

7  Ninth Circuit upheld the application of laches against damages and injunctive relief

8  where the plaintiff had first learned of the defendant in 1995, first contacted the

9  defendant approximately three years later in 1998, and sued a year later in 1999.  In

10  *Jarrow Formula v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002) (appeal

11  from C.D. Cal.), the court similarly upheld the application of laches barring both

12  damages and injunctive relief where plaintiff delayed for seven years after knowing of

13  its cause of action and where the court found that defendant would be prejudiced by a

14  prospective injunction.

15        The same is true with respect to copyright claims.  In *Zuill v. Shanahan*, 80 F.3d

16  1366, 1370 (9th Cir. 1996), the Ninth Circuit held that "it is inequitable to allow the

17  putative co-owner to lie in the weeds for years after his claim has been repudiated,

18  while large amounts of money are spent developing a market for the copyrighted

19  material, and then pounce on the prize after it has been brought in by another's effort.

---

22  [8] Similarly, in *DeCarlo v. Archie Comic Publ'ns, Inc.,* 127 F. Supp. 2d 497 (S.D.N.Y. 2001), *aff'd*

23  11 F. App'x 28 (2d Cir. 2001) (cited approvingly by *Carmichael Lodge No. 2103 v. Leonard,* 2009 WL 2985476 (E.D. Cal. Sept. 16, 2009) for its estoppel holding.), the court granted summary

24  judgment to defendant on the ground of equitable estoppel.  Plaintiff claimed rights in a comic book character that defendant had been granted only a limited license to copy.  However, for years

25  defendant used the character in ways exceeding the license plaintiff claimed had been granted. Plaintiff *knew* of Defendant's use and had not objected.  Plaintiff bought the infringement claim

26  when defendant attempted to use the character in a motion picture.  The court looked to the relationship between the parties in finding that plaintiff's silence <u>and inaction in the face of</u>

27  <u>defendant's repeated use</u> justified reliance on the plaintiff's conduct: "[W]hen one party in a relationship with another has an opportunity to speak in order to avoid harm or injury to the other

28  party and fails to do so to the ultimate prejudice of the other party, he will be estopped from relying thereafter on that relationship." *Id.* at 510 (citation omitted).

1       In view of TQFC's longstanding use of the TEAM QUEST logos without

2  objection, Henderson's copyright claim must be dismissed.

3  **IV.**    **CONCLUSION**

4       For all the foregoing reasons, TQFC respectfully requests that this Court

5  dismiss Plaintiff's Complaint in its entirety.

6  Dated: May 2, 2011             FINNEGAN, HENDERSON, FARABOW,

7                            GARRETT & DUNNER, L.L.P.

8

9                   By:   */s/ Robert F. McCauley*

10                     Robert F. McCauley (SBN 162056)

                         Michael C. Elmer (SBN 60366)

11                   Christopher P. Foley*

12                   Attorneys for Defendant Team Quest Fight
                         Club LLC and Matt Lindland

13                   *Not admitted in California

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT
Case No. CV-11-01350 DDP-DTB

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that on May 2, 2011, I electronically filed the foregoing

3    NOTICE OF AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR

4    SUMMARY JUDGMENT ON ALL COUNTS OF PLAINTIFF'S COMPLAINT OF

5    DEFENDANTS MATTHEW LINDLAND AND TEAM QUEST FIGHT CLUB,

6    LLC via the Court's Electronic Case Filing System (CM/ECF).  Notice of the filing is

7    being served upon counsel of record automatically through Notice of Electronic Filing

8    pursuant to L.R. 5-3.3.

9    Kevin M. Welch
     Law Office of Kevin M. Welch
10   P.O. Box 494
     Hermosa Beach, CA 90245
11   Kevin@kmwlawoffice.com

12   Craig Holiday
     Law Offices of Craig Holiday
13   4600 Campus Drive, Suite 108
     Newport Beach, CA 92660
14   Craig@holidaylegal.com

15

16                                             _/s/  Gail Selburn_____
                                               Gail Selburn
17                                             Litigation Paralegal
                                               FINNEGAN, HENDERSON,
18                                             FARABOW, GARRETT & DUNNER,
                                               L.L.P.
19                                             3300 Hillview Avenue
                                               Palo Alto, CA 94304
20                                             Telephone:  650-849-6600

21

22

23

24

25

26

27

28