Michael C. Elmer (SBN 60366)
Michael.Elmer@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
Work/Residence: 2 Overlook Drive
Newport Beach, California  92657
Telephone:  (949) 715-5263
Facsimile:   (650) 849-6666
        and
3300 Hillview Avenue
Palo Alto, California  94304
Telephone:  (650) 849-6600
Facsimile:   (650) 849-6666

Christopher P. Foley (not yet admitted *pro hac vice*)
Christopher.Foley@Finnegan.com
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
11955 Freedom Drive
Reston, VA  20190-5675
Telephone: (571) 203-2700
Facsimile: (202) 408-4400

Attorneys for Defendant
MATTHEW LINDLAND and
TEAM QUEST FIGHT CLUB, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## (WESTERN DIVISION)

| | |
|---|---|
| DANIEL HENDERSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW LINDLAND, an individual, TEAM QUEST FIGHT CLUB, LLC, an Oregon limited liability company, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. CV-11-01350<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT ON ALL COUNTS OF PLAINTIFF'S COMPLAINT** |

1
2
3
4
5
6
7
8
9

MATTHEW LINDLAND, an individual,
and TEAM QUEST FIGHT CLUB, LLC,
an Oregon limited liability company,

        Counterclaim Plaintiffs,

        v.

DANIEL HENDERSON, an individual,

        Counterclaim Defendant.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    ARGUMENT ......................................................................................................2

       A.     Henderson is Barred by Laches, Acquiescence and Estoppel From Seeking to
              Enjoin TQFC's Use of the TEAM QUEST Trademark and the TEAM QUEST
              Logos.................................................................................................................2

       B.     Even Accepting Henderson's Arguments, TQFC Owns the Intellectual
              Property in the TEAM QUEST Mark and Logos ....................................................4

       C.     Henderson Cannot Establish Priority Respect to the TEAM QUEST Name and
              Mark ...................................................................................................................5

       D.     Procedural Issues ..............................................................................................7

III.   CONCLUSION....................................................................................................7

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS, OR ON THE ALTERNATIVE, FOR SUMMARY
JUDGMENT ON ALL COUNTS OF PLAINTIFF'S COMPLAINT

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Asset Marketing Systems, Inc. v. Gagman*,
   542 F.3d 748 (9th Cir. 2008) ............................................................4

*Batiste v. Island Records, Inc.*,
   179 F.3d 217 (5th Cir. 1999) ........................................................5

*Buti v. Impressa Perosa S.R.L.*,
   139 F.3d 98 (2d. Cir. 1998)............................................................6

*Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*
   448 F.3d 1118 (9th Cir. 2006) ......................................................5

*Dermirer v. Kramer*,
   406 F.Supp. 756 ...........................................................................5

*Grupo Gigante S.A. de C.V. v. Dallo & Co.*,
   391 F.3d 1088 (9th Cir. 2004) .......................................................3

*In re Adair*,
   45 USPQ2d 1211 (TTAB 1997) ....................................................6

*In re Whataburger Systems, Inc.*,
   209 USPQ 429 (TTAB 1980) ........................................................6

*Jarrow Formula v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002) ......................................................3

*Johnson v. Diaz*,
   339 F.Supp. 60 (C.D. Cal. 1971) ..................................................5

*Marriott Corp. v. Valois*,
   163 USPQ 183 (TTAB 1970) ........................................................6

*Numbers Licensing LLC v. bVisual USA Inc.*,
   91 USPQ2d 1946 (E.D. Washington 2009) ...................................4

*Octocom Systems Inc. v. Houston Computer Systems, Inc.*,
   16 USPQ2d 1783 (Fed. Cir. 1990).................................................7

*Zuill v. Shanahan*,
   80 F.3d 1366 (9th Cir. 1996) ......................................................3

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS, OR ON THE ALTERNATIVE, FOR SUMMARY
JUDGMENT ON ALL COUNTS OF PLAINTIFF'S COMPLAINT

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)............................................................................................1, 7

Fed. R. Civ. P. 56(c) ...................................................................................................1

Local Rule 56-2............................................................................................................7

MOORE'S FED. PRAC. ¶ 12.34 [3][a], and (4) ...........................................................7

Rule 12(c)......................................................................................................................7

Rule 12(d)......................................................................................................................7

## I.  INTRODUCTION

Defendant Team Quest Fight Club, LLC ("TQFC") terminated Plaintiff Dan Henderson's trademark license effective March 2, 2011 because Henderson undertook steps to undermine the license and risk harm to the TEAM QUEST trademark. Henderson's Complaint, which was filed in retaliation to TQFC's action, does not establish a right to relief for several reasons and is an abuse of the judicial system. Accordingly, Defendants TQFC and Matthew Lindland seek dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

The arguments and purported evidence accompanying Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion (*i.e.*, the "Opposition Brief") fail to rebut the three independent grounds for dismissal set forth in Defendants' Motion.  Specifically,

    (1)    Henderson waited ten years to present the concerns set forth in the Complaint while Defendants' nurtured and expanded  the TEAM QUEST brand and assisted Henderson getting a foothold in the business;

    (2)    Henderson has not provided any evidence or cited any judicial precedent contradicting the fact that Henderson's former partner, Randy Couture, transferred all of his interest in Defendant TQFC back to TQFC (including his rights as the alleged "senior user" of the trademarks and an irrevocable license under the copyright) making TQFC and Henderson equals under Henderson's statement of the facts; and

    (3)    Henderson cannot establish priority with respect to the TEAM QUEST mark and logos.

Accordingly, dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) or, in the alternative, Fed. R. Civ. P. 56(c).

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR ON THE ALTERNATIVE, FOR SUMMARY JUDGMENT ON ALL COUNTS OF PLAINTIFF'S COMPLAINT

## II.     ARGUMENT

### A.     Henderson is Barred by Laches, Acquiescence and Estoppel From Seeking to Enjoin TQFC's Use of the TEAM QUEST Trademark and the TEAM QUEST Logos

Henderson's Opposition Brief is <u>silent</u> with respect to Defendants' assertion of laches, acquiescence and estoppel as a basis for dismissing Henderson's Complaint. The ten year delay is not referenced in his Declaration in response to TQFC's Motion. Significantly, it also is not addressed in Plaintiff's Statement of Genuine Dispute.

In his Opposition Brief, Henderson does not dispute that Lindland began using the TEAM QUEST name in connection with a wrestling program for kids that was registered in Oregon in April 2001. (See Motion to Dismiss, Lindland Decl., ¶ 2, Ex. A). He also does not dispute that in June 2001, Lindland took initial steps toward converting his wrestling program into a world renown mixed martial arts program, which also operated under the TEAM QUEST name. Nor does he dispute the extensive evidence of continuous use of the TEAM QUEST mark and TEAM QUEST logos by Defendants since 2001 in connection with athletic instructions, martial arts training, entertainment and sale of merchandise, among other things.

When Lindland began operating his TEAM QUEST wrestling program in early 2001, Henderson had moved to Southern California. In an interview in 2009 for a mixed martial arts (MMA) publication, *Don't Blink Magazine*, Henderson explained that after his Portland, Oregon exercise gym failed in 2000, he spent the next three or four years training out of a high school gym in Southern California for fights which took place in Japan. That was a good arrangement for him because "[He] didn't have to worry about bills or numbers and classes and everything else." (See Wright Decl., ¶ 24, Ex. J).

When he eventually became interested in operating a California gym, TQFC provided, at its own expense, advice and assistance in conducting MMA instruction and setting up training programs consistent with TQFC's expectations for quality. TQFC also offered promotional material and guidance with respect to use of the

1  TEAM QUEST name and mark and the TEAM QUEST logo.  Henderson was also

2  permitted to link directly to TQFC's website, TQFC.com, so that Henderson's

3  customers had immediate access to TEAM QUEST events and other MMA activities.

4  (See Follis Decl., ¶ 12, Ex. G).  TQFC spent years and considerable expense

5  developing its training programs, its promotional materials and its website.  TQFC

6  also covered, at its own expense, the legal and administrative expenses associated with

7  protecting TQFC's marks in other countries and sublicensing TQFC's mark, at

8  Henderson's request.

9      TQFC's actions on behalf of Henderson confirm Henderson's recognition of

10  TQFC's ownership and control of the TEAM QUEST marks.  Henderson was never

11  interested in having an ownership interest in the TEAM QUEST marks and logos.  He

12  even admits in his response to Defendants' Motion that he refused to contribute

13  toward legal fees spent in registering the marks, as well as offers to co-own the marks

14  under a separate corporate entity.  (Opposition Brief, p. 6, second paragraph).

15      Now, ten years after Lindland developed a successful business under the TEAM

16  QUEST brand, Henderson claims he owns the intellectual property associated with the

17  brand.  Neither the Court nor Defendants should be burdened with Henderson's

18  Complaint.  As set forth in Defendant's Motion, there is a wealth of authority for

19  barring Henderson's claim for relief.  *See, for example, Grupo Gigante S.A. de C.V. v.*

20  *Dallo & Co.*, 391 F.3d 1088, 1093 (9th Cir. 2004)(four year delay in bringing suit);

21  *Jarrow Formula v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002).

22      It is unseemly for Henderson to assert a claim of ownership in intellectual

23  property, in an attempt to undercut Defendants' long-established enterprise and its

24  investment in the brand.  *See Zuill v. Shanahan*, 80 F.3d 1366, 1370 (9th Cir. 1996)

25  and the cases cited in fn. 8 of Defendants' Motion to Dismiss.

26      Accordingly, Henderson's Complaint should be dismissed on this basis alone.

27

28

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS, OR ON THE ALTERNATIVE, FOR SUMMARY
JUDGMENT ON ALL COUNTS OF PLAINTIFF'S COMPLAINT

### B.    Even Accepting Henderson's Arguments, TQFC Owns the Intellectual Property in the TEAM QUEST Mark and Logos

According to Henderson, he and Couture coined the mark TEAM QUEST, commissioned an artist to create the TEAM QUEST logo and began using the name as a trademark before TQFC's Matt Lindland opened and operated his TEAM QUEST gym.  (See Henderson Decl., ¶¶ 1-3).  As such, Henderson asserts that he and Couture are the senior users of these trademarks and also authorized to use the artwork under the copyright laws. (See Complaint, ¶¶ 22, 28, 29, 37-39).  Indeed, under that analysis, Couture and Henderson acquired an <u>implied</u> <u>license</u> to use the artist's original work that is <u>irrevocable</u>.  *Asset Marketing Systems, Inc. v. Gagman*, 542 F.3d 748, 754-59 (9th Cir. 2008); *see also Numbers Licensing LLC v. bVisual USA Inc.*, 91 USPQ2d 1946 (E.D. Washington 2009).

Couture eventually partnered with Defendant Lindland to form TQFC under the TEAM QUEST mark and logo.  Henderson acknowledged that he knew about and consented to this arrangement.  (Opposition Brief, p. 1, second paragraph).  TQFC was incorporated in October 2002, and Couture's name appeared as an owner of TQFC on its federal trademark applications, thus reflecting Couture's claim of ownership in the name and logo.  Couture left TQFC in March 2006 to explore other business opportunities.  When he left, Couture transferred <u>all</u> of his interest in TQFC back to TQFC. (See Follis Decl., ¶ 9, Ex. F).  Couture's interest included any common law rights in the marks (*i.e.*, his rights as senior user), his irrevocable license in the artwork and the company's trademark applications and federal registrations.

Therefore, even if you accept that Henderson is a senior user of the TEAM QUEST mark,[1] when Couture transferred his rights back to TQFC, TQFC became the

---

[1] For the reasons addressed herein at II. C., Defendants do not believe Henderson is senior to Lindland and TQFC.

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR ON THE ALTERNATIVE, FOR SUMMARY JUDGMENT ON ALL COUNTS OF PLAINTIFF'S COMPLAINT

senior user, *i.e.,* co-owner, along with Henderson.[2]  When parties are co-owners of a mark, one party cannot sue the other for infringement.  A co-owner cannot infringe the mark it owns.  *Dermirer v. Kramer*, 406 F.Supp. 756) (E.D. Mich. 2005).    The same is true with respect to copyright.  *Batiste v. Island Records, Inc.*, 179 F.3d 217, 224 (5th Cir. 1999) (authorization to defendant from one joint owner constitutes an effective defense to an infringement action brought by another joint owner).

Accordingly, Henderson's Complaint should be dismissed on this basis alone.

## C.    Henderson Cannot Establish Priority Respect to the TEAM QUEST Name and Mark

To demonstrate priority of use, Henderson must prove (1) that he actually adopted and used the TEAM QUEST marks prior to TQFC in such a manner that sufficiently associated the marks with Henderson's provision of MMA instruction, athletic training, entertainment and athletic clothing, and (2) that his use of the marks was continuous and not interrupted.  *Dep't of Parks & Rec. v. Bazaar Del Mundo*, *Inc.*, 448 F.3d 1118, 1125-26 (9th Cir. 2006) (citations omitted).  As set forth in Defendants' Motion, Lindland began using the TEAM QUEST mark in interstate commerce in the United States in connection with athletic instruction at least as early as April 2001.

Use outside the United States cannot establish use or priority within the United States.  *See Johnson v. Diaz*, 339 F.Supp. 60, 64 (C.D. Cal. 1971) ("Plaintiff correctly argues…that prior use of a trademark in a foreign country does not entitle its owner to claim exclusive trademark rights in the United States….").  Each of the uses identified by Henderson on page 4 (Nos. 1 - 4) of the Opposition Brief to support his prior use relate to fights in Japan, as Henderson only fought in Japan until 2006.[3]  None of the

---

[2] The Art Assignments dated December 21, 2010 and February 1, 2011, which accompanied Plaintiff's Opposition Brief, <u>do</u> <u>not</u> affect or contradict this analysis.

[3] Lindland also fought in Japan in the Fall of 2000 and cornered for Henderson throughout most of the last ten years, and routinely wore TEAM QUEST branded clothing in connection with these events.

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR ON THE ALTERNATIVE, FOR SUMMARY JUDGMENT ON ALL COUNTS OF PLAINTIFF'S COMPLAINT

1  other uses asserted by Henderson predate Lindland's use based on his common law

2  use or TQFC's federal registrations.

3      Furthermore, when services are offered only outside the United States, the

4  promotion of those services within the United States does not give rise to U.S.

5  trademark rights.  *See Buti v. Impressa Perosa S.R.L.*, 139 F.3d 98, 103 (2d. Cir.

6  1998) (finding that the Defendant's advertising activities in the United States were

7  insufficient); *see also Marriott Corp. v. Valois*, 163 USPQ 183 (TTAB 1970) (use of

8  the name of a motel on articles such as soap and towels is advertising and not

9  sufficient to show use of the mark for such articles).  Therefore, even if Henderson

10  could show use on t-shirts in videos and other promotions, which Henderson has not

11  established, such uses would be insufficient to support priority.[4]

12      Moreover, use of a mark on a t-shirt or a video, even if in the United States,

13  does not establish trademark rights in services such as MMA instruction and athletic

14  training.  It is well-settled that a t-shirt showing only the mark with no reference to, or

15  association with, the services does not show usage with respect to the services.  *In re*

16  *Adair*, 45 USPQ2d 1211 (TTAB 1997) (tags affixed to decorated Christmas tree that

17  bear the mark "TREE ARTS CO. and design" and the applicant's location, but make

18  no reference to services, failed to show use for "design services in the nature of

19  designing handcrafted, permanently decorated Christmas and designer trees"); *In re*

20  *Whataburger Systems, Inc.*, 209 USPQ 429 (TTAB 1980) (iron-on transfer clothing

21  patches in the form and shape of a cartoon animal mark, distributed as free

22  promotional items to restaurant customers at counters, held insufficient to identify

23  restaurant services).

24      Contrary to representations in his Opposition Brief and Statement of Genuine

25  Dispute, Henderson points to no conflicting evidence.  Disagreement over how

26   

27       [4]  Henderson misleads the Court by suggesting the clothing sales provided at
www.danhenderson.com represent sales by Henderson.  As pointed out at page 7 of Defendants'
Motion (second full paragraph), Henderson simply added a shopping icon which linked to a Yahoo!

28  account paid for by TQFC featuring branded goods obtained by TQFC.

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS, OR ON THE ALTERNATIVE, FOR SUMMARY
JUDGMENT ON ALL COUNTS OF PLAINTIFF'S COMPLAINT

1   evidence should affect the Court's ultimate determination with respect to priority does

2   not create a genuine issue of material fact.  *Octocom Systems Inc. v. Houston*

3   *Computer Systems, Inc.*, 16 USPQ2d 1783, 1786 (Fed. Cir. 1990).  Accordingly,

4   dismissal or summary judgment is entirely appropriate.

5       In summary, Henderson's claim of prior trademark rights cannot be met and the

6   Complaint should be dismissed for this reason alone.

7       **D.    Procedural Issues**

8       Finally, Plaintiff's Opposition raises several procedural concerns regarding

9   Defendants' Motion to Dismiss.  In response to these concerns, Defendants note: (1) a

10  Rule 12(b)(6) motion is not barred if filed concurrently with the answer and

11  counterclaims, (2) in any event, Defendants' Motion to Dismiss was clearly filed

12  *before* their Answer, as reflected in the Court's Docket: Motion to Dismiss (Dkt. No.

13  11), Answer (Dkt. No. 13), (3) Rule 12(d) specifically gives the court discretion to

14  accept and consider extrinsic materials offered in conjunction with a Rule 12(b)(6)

15  motion, "thus converting a motion to dismiss to a motion for summary judgment."

16  MOORE'S FED. PRAC. ¶ 12.34 [3][a], and (4) in the interest of efficiency, Defendants

17  consented to a suspension in the due date for answering the Counterclaims until after

18  the hearing on the instant motion.

19      Although filed on the same day, Defendants' Motion to Dismiss was plainly

20  filed *before* their answer.  Thus, Defendants' motion clearly comports procedurally

21  with Rule 12(b)(6) and is properly before this Court at this time.  Therefore, Plaintiff's

22  procedural concerns with respect to Rule 12(b)(6) are unfounded, and his concerns

23  regarding Rule 12(c) and Local Rule 56-2 are not applicable.

24  **III.    CONCLUSION**

25      For all the foregoing reasons and for the reason set forth in Defendants' Motion,

26  this Court should grant its Motion to Dismiss, or in the Alternative, for Summary

27  Judgment on All Counts of Plaintiff's Complaint.

28

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS, OR ON THE ALTERNATIVE, FOR SUMMARY
JUDGMENT ON ALL COUNTS OF PLAINTIFF'S COMPLAINT

1

2

3   Dated: May 27, 2011                    FINNEGAN, HENDERSON, FARABOW,
                                            GARRETT & DUNNER, L.L.P.
4

5

6

7                                          By:   /s/ Michael C. Elmer
                                                 Michael C. Elmer (SBN 60366)
8                                                Christopher P. Foley*
9                                                Attorneys for Defendant Team Quest Fight
                                                 Club LLC and Matt Lindland
10                                               *Not yet admitted *pro hac vice*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
                                             DISMISS, OR ON THE ALTERNATIVE, FOR SUMMARY
                                             JUDGMENT ON ALL COUNTS OF PLAINTIFF'S COMPLAINT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 27, 2011, I electronically filed the foregoing REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT ON ALL COUNTS OF PLAINTIFF'S COMPLAINT via the Court's Electronic Filing System (CM/ECF). Notice of the filing is being served upon the following counsel of record through Notice of Electronic Filing pursuant to L.R. 5-3.3.

Kevin M. Welch
Law Office of Kevin M. Welch
P.O. Box 494
Hermosa Beach, CA 90245
Kevin@kmwlawoffice.com

_____/s/ Michael C. Elmer_____
Michael C. Elmer (SBN 60366)

## **CERTIFICATE OF SERVICE**

1

2          I am over the age of 18 and not a party to this action.  Pursuant to Civil L.R.

3   5-3.3 (service of electronically filed documents on attorneys not registered for the

4   CM/ECF system), I served the following documents on the person at the address and

5   by the method as indicated on the dates specified below:

6          1)     Reply Brief in Support of Defendants' Motion to Dismiss or, in the
                  Alternative, for Summary Judgment on All Counts of Plaintiff's
7                 Complaint; and Certificate of Service

8

9   Craig Holiday                              ☒ Via U.S. Mail on May 27, 2011
    Law Offices of Craig Holiday              ☐ Via Hand Delivery
10  4600 Campus Drive, Suite 108             ☐ Via Overnight Courier
    Newport Beach, CA 92660                  ☐ Via Facsimile
11  Craig@holidaylegal.com                   ☒ Via Email on May 27, 2011

12

13

14

15  Dated:  May 27, 2011                      _____
                                              Gail Selburn
16                                            Litigation Paralegal
                                              FINNEGAN, HENDERSON,
17                                            FARABOW,
                                                GARRETT & DUNNER, L.L.P.
18                                            3300 Hillview Avenue
                                              Palo Alto, California  94304
19                                            Telephone:  (650) 849-6600
                                              Facsimile:   (650) 849-6666

20

21

22

23

24

25

26

27

28