LAW OFFICE OF KEVIN M. WELCH
Kevin M. Welch, Esq. (SBN 254565)
*Kevin@kmwlawoffice.com*
P.O. Box 494; Hermosa Beach, CA 90245
Tel.: (310) 929-0553
Fax: (310) 698-1626

LAW OFFICES OF CRAIG HOLIDAY
Craig Holiday, Esq. (SBN 222803)
*Craig@holidaylegal.com*
4600 Campus Drive, Suite 108
Newport Beach, CA 92660
Tel.: (949) 261-0288
Fax: (949) 261-0988

Attorney for the Plaintiff,
DANIEL HENDERSON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DANIEL HENDERSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW LINDLAND, an individual, TEAM QUEST FIGHT CLUB, LLC, a Oregon limited liability company,<br><br>Defendants. | Case No.: CV-11-01350 DDP-DTBx<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR AN ORDER TREATING SPECIFIED FACTS AS ESTABLISHED**<br><br>Hearing Date:   July 16, 2012<br>Time:           10:00 am<br>Courtroom:      3, 2nd floor<br>Judge:          Hon. Dean D. Pregerson |

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR AN ORDER TREATING SPECIFIED FACTS AS ESTABLISHED**

1. **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**
2. **NOTICE IS HEREBY GIVEN** that on July 16, 2012, at 10:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at 312 N. Spring Street, Los Angeles, CA 90012, Plaintiff DANIEL HENDERSON ("Dan Henderson") will and hereby does move the Court, pursuant to Fed. R. Civ. P. 56, for a Summary Judgment, or in the alternative, for an Order treating specified facts as established. Pursuant to Local Rule 7-3, counsel for Plaintiff discussed the subject matter of this Motion with Defendants' counsel via the telephone on June 5, 2012.

This Motion is based upon this Notice of Motion and Motion, the Memorandum in Support, the Declarations of Steve Quadros and Daniel Henderson in support thereof, all pleadings and papers filed in this action, and upon other matters as may be presented to the Court at the time of the hearing.

Dated: June 15, 2012           Respectfully Submitted,

By: _____

Kevin M. Welch (SBN 254565)
LAW OFFICE OF KEVIN M. WELCH
*Kevin@kmwlawoffice.com*
P.O. Box 494
Hermosa Beach, CA 90254
Tel.: (310) 929-0553

Attorney for Plaintiff,
DANIEL HENDERSON

---

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR AN ORDER TREATING SPECIFIED FACTS AS ESTABLISHED**

# MEMORANDUM IN SUPPORT

## I. INTRODUCTION

This dispute concerns the ownership and right to use the trademark TEAM QUEST and the associated logo comprising a clenched fist (the "TEAM QUEST Logo") (together the "Team Quest Marks").

Plaintiff DANIEL HENDERSON ("Henderson") along which his partner Randy Couture coined and began using the mark TEAM QUEST to represent a team of guys who trained together and fought in mixed martial arts tournaments for the entertainment of their audience. Henderson and Couture coined the name and approached an artist to commission the artwork in the late 1990's.

Defendant MATTHEW LINDLAND ("Lindland"), a friend and colleague of Henderson and Couture, began using the Team Quest Marks in conjunction with a youth wrestling program and clothing sales. According to Lindland, these activities started as early as April and May of 2001, respectively. On October 24 of 2002 Lindland created Defendant TEAM QUEST FIGHT CLUB, LLC ("TQFC"), a gymnasium that offers mixed martial arts training. In May of 2005 and again in December of 2008 TQFC filed for and received federal trademark registrations for various versions of the Team Quest Marks.

After TQFC received its federal registration, Lindland requested that Henderson reimburse him for the legal fees TQFC had expended registering the federal trademark registrations. When Henderson refused, Defendants sent Henderson a Cease and Desist letter demanding that he cease all use of the TEAM QUEST Marks that he had been using for over a decade. Henderson responded that he was the senior and prior user and filed the present action to have this Court adjudicate ownership of the Team Quest Marks.

Henderson feels this matter is ripe for Summary Adjudication because Defendants plead that Dan Henderson was the prior user of the Team Quest Marks in their First Amended Counterclaim but dismissed Henderson prior use and

foreign use and therefore ineligible to accrue trademark rights because the fights occurred in Japan and, according to Defendants, "[s]ince the T-shirts [were] not worn during the fights, to the extent any fights were broadcast or videotaped, the Team Quest name and logo were rarely, if ever, visible. Further, fights in Japan are reported to the public in Japanese."

Henderson believes he has submitted ample evidence that these assumptions are either incorrect or irrelevant and respectfully request that this Court find that he is the prior, senior user of the TEAM QUEST marks.

## II.   STATEMENT OF FACTS

1) Plaintiff DANIEL HENDERSON ("Henderson") filed this lawsuit for, *inter alia*, trademark infringement, copyright infringement, and unfair competition on February 14, 2011 and served it on Defendants on April 11, 2011. (See Plaintiff's Complaint for Damages and Proof of Service).

2) In Henderson's Complaint, he pleads that he filed the present suit in order to preserve his rights after receiving a cease and desist letter on January 24, 2011 directing him to stop using the Team Quest Marks that he had coined and has been using continuously in commerce for over a decade (See Plaintiff's Complaint for Damages).

3) In Henderson's Complaint for Damages, he pleads that he and former partner Randy Couture conceived of and have been using the Team Quest marks in commerce in conjunction with mixed martial arts instruction, mixed martial arts fighting entertainment, and related apparel at least as early as 1999, and that he continues use the marks to this very day. (See Complaint for Damages, Page 5, ¶ 12).

4) Defendants plead in paragraph no. 14 of their First Amended Counterclaims that "…From, the Fall of 2000 through the Fall of 2006, Henderson fought in professional MMA fights in Japan for RING and PRIDE organizations. He

1  averaged three professional fights a year, all of which were in Japan." (See First
2  Amended Counterclaims, Page 11, ¶ 14).
3  5) Defendants plead in footnote no. 2 to paragraph no. 14 of their First Amended
4  Counterclaims that "[s]ince T-shirts are not worn during the fights, to the extent
5  any fights were broadcast or videotaped, the TEAM QUEST name and logo
6  were rarely, if ever, seen, visible. Further, the fights in Japan are reported to the
7  public in Japanese." (See First Amended Counterclaims, Page 11, Footnote 2).
8  6) In reality, Henderson wore the Team Quest Marks very prominently on shirts,
9  hats, and shorts in each and every fight in which he participated. (See
10 Henderson Decl. ¶¶ 4,13,14,15,22,23,25,
11 26,27,28,29,30,32,33,34,35,36,37,38,39,40, and 41).
12 7) Henderson's corner coaches wore the Team Quest Marks very prominently on
13 shirts and hats in each and every fight in which he participated. (See Henderson
14 Decl. ¶¶ 2,3,4,11,12,13).
15 8) Details of the fights including pictures and articles were reported throughout the
16 United States by Full Contact Fighter through a monthly magazine and the
17 website www.fcfighter.com. (See Henderson Decl. ¶¶ 5,6,7, and 8).
18 9) Details of the fights including pictures and articles were reported throughout the
19 United States by Sherdog, a website dedicated to mixed martial arts,
20 www.sherdogcom. (See Henderson Decl. ¶9).
21 10)  Details of the fights including pictures and articles were reported throughout
22 the United States via the Pride Fighting Championship website,
23 www.pridefc.com. (See Henderson Decl. ¶ 16,18, and 19).
24 11)  Starting as early as January 6, 2000, the fights were broadcast throughout the
25 United States on pay-per-view television by such carriers as DIRECTV, Dish
26 Network. (See Henderson Decl. ¶¶ 8,10,16,18, and 19 and Quadros Decl. ¶¶2
27 and 3).
28 12)  The pay-per-view Broadcasts were commented on in English intended for

the English speaking audience of the United States of America. (See Quadros Decl. generally)

13) The association between Dan Henderson and the Team Quest Marks was of such great magnitude that Sony created a video game for its PlayStation 2 that featured an animated Dan Henderson wearing a shirt that features the Team Quest Marks. The video game was sold throughout the United States. (See Henderson Decl. ¶ 24).

14) Henderson featured the Team Quest marks on his website next to a store button were fans throughout the United States could buy merchandise at least as early as May 26, 2002. (See Henderson Decl. ¶ 20).

15) Defendant TEAM QUEST FIGHT CLUB, LLC ("TQFC") did not exist until October 24, 2002. (See Henderson Decl. ¶ 21).

16) Defendant claim a First Use in Commerce date for operating youth wrestling program of April of 2001, May 2001 for selling clothing bearing the marks, and October 2002 for mixed martial arts instruction. (See Henderson Decl. ¶ 42, Response to Interrogatory 3).

## III. ARGUMENT

Under Rule 56, a motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

### A. Dan Henderson is the first party to use the Team Quest Marks, as trademark in United States commerce and is, therefore, the senior and prior User of the Team Quest Marks and the rightful owner.

The basic rule of trademark ownership in the United States is priority of use. For inherently distinctive marks, ownership goes to the first entity to use the designation as a mark. The cases are legion to the effect that for inherently distinctive marks, ownership is governed by priority of use. For such marks, the first to use a designation as a mark in the sale of goods or services is the "owner" and the "senior user." These marks are given legal protection against infringement immediately upon adoption and use in trade: "A technical trademark, consisting of a coined or fanciful expression, comes into being as soon as it is affixed and the goods are sold. ... Priority of user alone is controlling." Apart from the concept of constructive use, it is not registration, but only actual use of a designation as a mark that creates rights and priority over others. The United States, unlike many civil law nations, has a rule of priority that is based on first-to-use, not first-to-register. Sengoku Works Ltd. v. RMC Intern., Ltd., 96 F.3d 1217, 1219, 40 U.S.P.Q.2d 1149 (9th Cir. 1996), as modified, 97 F.3d 1460 (9th Cir. 1996) ("It is axiomatic in trademark law that the standard test of ownership is priority of use."); One Industries, LLC v. Jim O'Neal Distributing, Inc., 578 F.3d 1154, 1158, 92 U.S.P.Q.2d 1065, 74 Fed. R. Serv. 3d 778 (9th Cir. 2009), cert. denied, 130 S. Ct. 1739, 176 L. Ed. 2d 213 (2010) ("It is a cardinal principle of federal trademark law that the party who uses the mark first gets priority.").

In the instant case, Henderson has shown ample evidence that Henderson provided mixed martial art entertainment while wearing clothing that prominently displayed the Team Quest Marks and thereby associating them with himself. Further, his corner coaches and all other members of his team that were present at the mixed martial arts tournaments in which Henderson competed wore clothing

1  that similarly displayed the Team Quest marks so as to strengthen the association
2  between the Team Quest Marks and Henderson's team.  The manner in which
3  Henderson displayed the Team Quest Marks while providing his service ((mixed
4  martial arts entertainment) is consistent with use as a trademark.  (See Henderson
5  Decl. ¶¶ 2,3,4,11,12,13,14,15,22,23,25,26,27,28,29,30,32,33,34,35,36,37,38,39,40,
6  and 41)

   The mixed martial arts tournaments were recorded, photograph, and written about so that a vast consumer base in the United States of America could consume the entertainment.  Initially, consumers in the United States of America accessed the entertainment via monthly magazines, DVD's, and websites such as Sherdog, www.sherdog.com; and Full Contact Fighter, www.fcfighter.com.  Sales of magazines, DVD's, providing entertainment through Internet websites is well within the purvey of U.S. Commerce therefore Hendwerson common law rigths in the Team Quest Mark began to accrue at this point. (See Decl. ¶¶ 5,6,7,8,9,16,18,19).

   At least as early as, January of 2000, the mixed martials arts entertainment that Henderson was providing by entering and competing in mixed martial arts tournaments was being broadcast into the homes and businesses throughout the United States of America through pay-per-view television with play-by-play commentary provided in English. (See Henderson Decl. ¶¶8,10,16,18, 19 and Quadros Decl. generally). As before pay-per-view television broadcast well within the purvey of commerce that may be regulated by Congress.

   The popularity the mixed martial arts entertainment association between Henderson reach a magnitude that caused Sony to create a PRIDE mixed martial arts video game that featured an animated Dan Henderson wearing clothing that featured the Team Quest Marks. (See Henderson Decl. ¶ 24).

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR AN ORDER TREATING SPECIFIED FACTS AS ESTABLISHED**

Henderson has provide evidence of use of his 1) use of the Team Quest Marks 2) that is consistent with trademark use for providing a service 3) in the United States of America 4) that predated the first use dates claimed by Lindland (April of 2001) and the very existence of Defendant TQFC (October of 2002). (See Henderson Decl. ¶42 Response to Interrogatory No. 3 and ¶21).

## IV. CONCLUSION

For the forgoing reasons, Plaintiff respectfully requests that this Court find that there is sufficient evidence on the face of the record to find that Plaintiff is the senior, prior user of the Team Quest Marks and therefore the rightful owner, or alternatively, for an order treating specified facts as established as the Court deems appropriate:

1) Henderson is the senior, prior user of the Team Quest Marks;
2) Henderson used the Team Quest Marks in a proper manner to accrue trademark rights;
3) Pay-per-view television broadcasts into the United States of America of mixed martial arts tournaments in which Henderson competed while visibly wearing clothing that featured the Team Quest Marks constitutes use of the Team Quest Marks in conjunction with mixed martial art entertainment in U.S. Commerce;
4) Photographs and articles featuring Henderson visibly wearing clothing displaying the Team Quest Marks with posted on Internet websites that are accessed by consumers of the mixed martial arts entertainment within the United States of America constitute use of the Team Quest Marks in conjunction with mixed martial arts entertainment in U.S. Commerce.

|  |  |
|---|---|
| 1 |  |
| 2 |  |
| 3 |  |
| 4 | Dated: June 15, 2012     Respectfully Submitted, |
| 5 |  |
| 6 |  |
| 7 | By: _____ |
| 8 | Kevin M. Welch (SBN 254565) |
| 9 | LAW OFFICE OF KEVIN M. WELCH |
|   | *Kevin@kmwlawoffice.com* |
| 10 | P.O. Box 494 |
|    | Hermosa Beach, CA 90254 |
| 11 | Tel.: (310) 929-0553 |
| 12 | Attorney for Plaintiff, |
|    | DANIEL HENDERSON |

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR AN ORDER TREATING SPECIFIED FACTS AS ESTABLISHED