O

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   DANIEL HENDERSON, an          )   Case No. CV 11-01350 DDP (DTBx)
     individual,                   )
12                                 )   **ORDER GRANTING IN PART AND**
                        Plaintiff, )   **DENYING IN PART PLAINTIFF'S**
13                                 )   **SECOND MOTION FOR SUMMARY**
          v.                       )   **JUDGMENT, OR IN THE ALTERNATIVE,**
14                                 )   **FOR AN ORDER TREATING SPECIFIED**
     MATTHEW LINDLAND, an          )   **FACTS AS ESTABLISHED**
15   individual; TEAM QUEST FIGHT  )
     CLUB,LLC, an Oregon limited   )   **[Docket No. 71 ]**
16   liability company ,           )
                                   )
17                      Defendants.)
     _____)
18

19        Presently before the Court is Plaintiff Daniel Henderson's

20   ("Plaintiff") Second Motion for Summary Judgment, or in the

21   Alternative, for an Order Treating Specified Facts as Established

22   ("Motion").  (Docket No. 71.) The Court GRANTS summary judgment in

23   Defendant's favor on the copyright infringement and the senior and

24   continuous user issues.  The Court DENIES summary judgment on the

25   laches, trademark cancellation, and trademark counterfeiting

26   issues.

27   ///

28

**I Background**

On August 15, 2012, this Court issued its Order Denying Plaintiff's Motion for Summary Judgment ("Order"). (Docket No. 67.) The Order outlines the factual background for this case, which the Court now adopts. (Order at 1:25-5:7.) The basic facts of the case, though, are as follows. Plaintiff has sued Defendants Matthew Lindland ("Lindland") and Team Quest Fight Club ("TQFC") LLC (collectively "Defendants") for trademark infringement, copyright infringement, and unfair competition. (See generally Compl., Docket No. 1.) Defendants have counterclaimed for trademark infringement, false designation of origin, unfair competition, trademark counterfeiting, copyright infringement, deceptive advertising, breach of contract, breach of covenant of good faith and fair dealing, and intentional interference with prospective economic advantage. (See generally Amended Answer and Counterclaims, Docket No. 43.) Plaintiff, his teammate Randy Couture ("Couture"), and Lindland are all mixed martial arts ("MMA") fighters. Plaintiff and Couture came up with the name TQFC in 1999, and the name has since featured prominently in televised fights and even video games depicting Plaintiff. Lindland began to associate with Plaintiff and Couture, and in April 2001 started using the TQFC trademark. Lindland and Couture founded TQFC LLC, an MMA gym in 2002. In 2006 Couture released his rights in TQFC LLC to Lindland. (Decl. of Robert Follis in Supp. of Defs.' Mot. to Dismiss ¶ 9, Ex. F. (filed under seal).) Plaintiff, Lindland, and Couture maintained fairly amicable relations until 2011, when this case was brought.

## II. **Legal Standard on Summary Judgment**

Summary judgment shall be granted when a movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In other words, summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Parth v. Pomona Valley Hosp. Med. Ctr., 630 F.3d 794, 798©99 (9th Cir. 2010)(internal quotation marks omitted).

To satisfy its burden at summary judgment, a moving party must produce facts for each element which it has the burden of proof at trial "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (emphasis omitted). A moving party without the burden of persuasion "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000); see also Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), and citing Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 532 (9th

1    Cir. 2000) (holding that the *Celotex* "showing" can be made by

2    "pointing out through argument-  the absence of evidence to support

3    plaintiff's claim")).

4        It is not enough for a party opposing summary judgment to

5    "rest on mere allegations or denials of his pleadings." <u>Anderson</u>

6    <u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 259 (1986).  Instead, the

7    nonmoving party must go beyond the pleadings to designate specific

8    facts showing that there is a genuine issue for trial. <u>Celotex</u>,

9    477 U.S. at 325.

10       At the summary judgment stage, the Court does not make

11   credibility determinations or weigh conflicting evidence, and views

12   all evidence and draws all inferences in the light most favorable

13   to the non-moving party.  <u>See id.</u> at 630-31 (citing <u>Matsushita</u>

14   <u>Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587

15   (1986)); <u>see also</u> <u>Hrdlicka v. Reniff</u>, 631 F.3d 1044 (9th Cir.

16   2011); <u>Miranda v. City of Cornelius</u>, 429 F.3d 858, 860 n.1 (9th

17   Cir. 2005).  Speculative testimony in affidavits and motion papers

18   is insufficient to raise genuine issues of fact and defeat summary

19   judgment.  <u>Thornhill Publ'g Co., Inc. v. GTE Corp.</u>, 594 F.2d 730,

20   738 (9th Cir. 1979).  As the Supreme Court has stated, "[t]he mere

21   existence of a scintilla of evidence . . . will be insufficient;

22   there must be evidence on which the jury could reasonably find for

23   the [non-moving party]."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

24   242, 252 (1986).

25       It is not the Court's task "to scour the record in search of a

26   genuine issue of triable fact."  <u>Keenan v. Allan</u>, 91 F.3d 1275,

27   1279 (9th Cir. 1996). Counsel has an obligation to lay out their

28

support clearly. <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237
F.3d 1026, 1031 (9th Cir. 2001). The Court "need not examine the
entire file for evidence establishing a genuine issue of fact,
where the evidence is not set forth in the opposing papers with
adequate references so that it could conveniently be found." <u>Id.</u>

### III. <u>Discussion</u>

As in his first summary judgment motion, Plaintiff asks the
Court to find that he was the senior user of the TQFC trademarks,
and that he thus has priority. "It is a cardinal principle of
federal trademark law that the party who uses the mark first gets
priority." <u>One Indus., LLC v. Jim O'Neal Distrib., Inc.</u>, 578 F.3d
1154, 1158 (9th Cir. 2009). "It is axiomatic ... that the standard
test of ownership is priority of use.... [T]he party claiming
ownership must have been the first to actually use the mark in the
sale of goods or services." <u>Brookfield Commc'ns, Inc. v. W. Coast
Entm't Corp.</u>, 174 F.3d 1036, 1047 (9th Cir.1999) (internal
quotation marks omitted).

Plaintiff's first summary judgment motion was procedurally
denied because his evidence was not properly authenticated. (Order
at 7:22-8:12.) Plaintiff claims to have cured this defect with
sworn declarations attesting to the previously challenged
evidence's accuracy, and has resubmitted that evidence for this
Motion. (<u>See</u> Plaintiff's Memorandum in Support Motion ("Memo.") at
3:20-4:5, Docket No.71.) Since Defendants have not objected to the
re-submitted evidence in this Motion, it is hereby accepted.
Defendants challenge Plaintiff's priority claim with three
arguments. First, Plaintiff merely displayed the marks, and he did

1   not use them in commerce.  Second, even if Plaintiff did use them

2   in commerce, he did so in Japan, not in the United States.  Third,

3   Defendants argue that they are entitled to laches in any event,

4   because Plaintiff has waited more than a decade to assert his

5   right.

6        Plaintiff additionally seeks summary adjudication on the

7   issues of Defendant's laches affirmative defense, canceling

8   Defendants' registered trademarks, Defendants' trademark

9   counterfeit counterclaim, and Defendants' copyright infringement

10  counterclaim.

11       **A. <u>Use in Commerce</u>**

12       The Court's prior Order explained how it would have ruled on

13  the use in commerce issue if Plaintiff's evidence had not been

14  defective.  (Order at 9:1-10:2.)  As discussed, defective evidence

15  is no longer an issue.  The Order suggested the Court would find

16  that Plaintiff began using the TQFC mark in commerce before April

17  2001, and has continually used it since.  (<u>Id.</u>)  The Order relied

18  on such evidence as MMA fights where Plaintiff and his corner

19  coaches wore clothing with the TQFC mark, Plaintiff accepting a

20  $200,000 check for his MMA services while wearing the TQFC mark, a

21  video game depicting Plaintiff wearing clothes featuring the TQFC

22  mark, and an MMA commentator's sworn statement that he associated

23  the TQFC mark with Plaintiff.  (<u>Id.</u>; <u>see</u> <u>generally</u> Quadros Decl.,

24  Docket No. 71-48; Henderson Decl. and Exs., Docket Nos. 71-1 - 71-

25  33; Butler Decl. Ex. A, Docket No. 71-4.)  The Court now adopts the

26  reasoning and conclusions it did in the Order.  (<u>Id.</u>)  Therefore,

27  Plaintiff is the senior and continuous user of the TQFC mark.

28

1    Defendants argue that Plaintiff's commercial use was

2 insufficient for two reasons: (1) "Mere display of mark on athletic

3 apparel is not a trademark use;" and (2) "use of a mark on a t-

4 shirt or a video. . . does not establish trademark rights and

5 services such as MMA instruction, athletic training, or the sale of

6 apparel."  (Defendants' Opposition to Motion ("Opp'n") at 6:10-

7 8:21, Docket No. 73.)  Defendants' argument on the first point is

8 essentially the same as what they said in their opposition brief

9 for the first summary judgment motion, often borrowing from that

10 brief verbatim.  (See Docket No. 61 at 9:9-10:16.)  Their second

11 argument appears to be what they stated word-for-word in their

12 first opposition brief.  (See id. at 12:3-17.)  Because Defendants

13 make the same arguments, the Court reaches the same decision, and

14 hereby adopts the Order's reasoning.  (Order at 9:1-10:2).

15 Regarding the first argument, Plaintiff's use of the TQFC mark

16 constitutes commercial use.[1]  However, the Order's discussion of

17 Defendants' second argument should be supplemented.

18    The second argument is essentially about likelihood of

19 confusion, not priority and commercial use.  Priority is about who

20 uses a mark first, not about the type of products or services the

21 mark is used on.  (See e.g. One Indus. 578 F.3d at 1158 ("It is a

22 cardinal principle of federal trademark law that the party who uses

23 the mark first gets priority.").  Likelihood of confusion is

24 _____

25    [1]Plaintiff's fights may be considered an entertainment service.  Marks related to entertainment services are protectable. See generally J. Thomas

26 McCarthy, McCarthy on Trademarks and Unfair Competition, § 10:38 (4th ed.) "The term 'use in commerce' means the bona fide use of a mark in the ordinary course

27 of trade." 15 U.S.C. § 1127.  As explained, Plaintiff regularly fought in pay per view fights (and engaged in other activities) using the mark.

28

1  different.   See Guichard v. Universal City Studios, LLLP, No. C

2  06-6392 JSW, 2007 WL 1750216, at *2  (N.D. Cal. June 15, 2007)

3  (explaining that under the Lanham Act, a plaintiff must prove both

4  that she has "a valid, protectable trademark interest" and that

5  there is a "likelihood of confusion," and noting that priority goes

6  to whether the mark is protectable).  Regardless of who used a mark

7  first, a party will not be found to have infringed unless the marks

8  are used in a way that is likely to cause confusion.   See generally

9  AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 347 (9th Cir. 1979);

10  see also Guichard,2007 WL 1750216, at *4 ("Only after Plaintiff

11  demonstrates that he has a valid, protectable trademark interest

12  does the Court turn to the [likelihood of confusion analysis]".).

13  Defendants' argument that Plaintiff was not the first to

14  commercially use the TQFC mark in the type of services and products

15  Defendants offer, then, is essentially a likelihood of confusion

16  argument.   The Court need not address the likelihood of confusion

17  issue, because neither party has moved for the Court to do so.

18       **B. <u>Location of Use</u>**

19       The Court's Order explained how the Court would have ruled on

20  the location of use issue if Plaintiff's evidence had not been

21  defective.  (Order at 10:3-21.)  Although Plaintiff's MMA fights

22  were in Japan, where he featured the TQFC mark, these fights were

23  marketed in the United States and available on Pay-Per-View in this

24  country, with a number occurring before April 2001.  (See id.; see

25  generally Quadros Decl.; Henderson Decl. and Exs.; Butler Decl. Ex.

26  A.)  As discussed, defective evidence is no longer an issue.

27  Defendants claim that if Plaintiff commercially used the TQFC mark,

28

he used it outside the United States, which is insufficient for senior user status. (*See* Opp'n at 8:22-9:8.) Defendants' location of use argument is again, nearly word-for-word what they argued in their opposition brief for the first summary judgment motion. (Docket No. 61 at 11:7-12:2.) The Court, therefore, adopts its prior reasoning, and finds that Plaintiff has continually used the TQFC mark in commerce within the United States prior to Defendants. (Order at 10:3-21.)

### C. Estoppel by Laches and Estoppel by Acquiescence

Plaintiff seeks summary adjudication on Defendants' laches and acquiescence defenses. Although the terms are often used as synonyms in case law, laches "denotes passive consent, while acquiescence implies active consent." J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition ("McCarthy"), § 31:41 (4th ed. 2002); *see also* Seller Agency Council, Inc. v. Kennedy Center for Real Estate Educ., Inc., 621 F.3d 981, 989 (9th Cir. 2010)("[P]rejudice in the context of acquiescence inherently must involve reliance on the senior user's affirmative act or deed, and such reliance must be reasonable."). It is clear from their brief, though, that Defendants are arguing that Plaintiff waited too long to bring his current action, thus indicating the passive nature of laches, not acquiescence. (*See* generally Opp'n at 9:9-10:21.) It is equally clear that Plaintiff also focuses on the passiveness element, and is arguing against laches. (*See* generally Memo. at 12:11-14-16; Plaintiff's Reply in Support of Motion ("Reply") at 4:20-8:28.)

1    The Order indicated the Court was inclined to find that laches
2    barred Plaintiff's claims.  (Order at 11:12-13:24.)  The Court
3    emphasized the considerable length of time that both parties had
4    used the mark, the substantial investment both made in using the
5    mark, and Plaintiff's long-standing consent of Defendants' use.
6    (Id.)  Plaintiff, however, makes one new argument.  Plaintiff
7    claims that a laches affirmative defense is unavailable to
8    Defendant, because Plaintiff and Couture (both senior users) had
9    given Defendants an implied license to use the TQFC mark.  (Memo.
10   at 12:11-13:16.)  Plaintiff filed suit within a month of receiving
11   Defendants' letter demanding that he cease and desist in his use of
12   the TQFC mark, and it was at this time that he allegedly revoked
13   the implied license.  Therefore, Plaintiff claims, he did not wait
14   an undue amount of time to file suit, and laches is inapplicable.

15       The Ninth Circuit has "set out six factors for determining
16   whether laches bars a claim for either damages or injunctive relief
17   in an action for trademark infringement."  Grupo Gigante SA De CV
18   v. Dallo & Co., Inc., 391 F.3d 1088, 1101-1102 (9th Cir. 2004).
19   These factors include:
20        1. strength and value of trademark rights asserted;
21        2. plaintiff's diligence in enforcing mark;
22        3. harm to senior user if relief denied;
23        4. good faith ignorance by junior user;
24        5. competition between senior and junior users; and
25        6. extent of harm suffered by junior user because of senior
26        user's delay.
27
28

1    <u>Id.</u> at 1102.  "Laches exists when the plaintiff knows of the

2    defendant's infringing use, delays in taking any action against

3    that use, and knows the defendant is prejudiced as a result of the

4    delay."  3A Fed. Jury Prac. & Instr. ch. 159 (5th ed.)  Laches,

5    accordingly, only applies in situations of prolonged infringement.

6         However, there can be no trademark infringement if a defendant

7    has an implied license to use a trademark.  McCarthy, § 18:43.50

8    (4th ed. 2002); <u>see Dep't of Parks & Recreation for State of</u>

9    <u>California v. Bazaar Del Mundo Inc.</u>, 448 F.3d 1118, 1129 (9th Cir.

10   2006) (describing an implied license as a defense to trademark

11   infringement).  "Licenses are contracts governed by ordinary

12   principles of state contract law."  <u>Bazaar Del Mundo</u>, 448 F.3d at

13   1130 (quotations omitted).  To show an implied license there must

14   be "evidence of an agreement or course of conduct by the parties to

15   contract for a trademark license."  <u>Id.</u>  In order for a court to

16   find the existence of an implied license, it is imperative for a

17   licensor to have "maintain[ed] control over the quality of the

18   product or service to guarantee to the public that the goods or

19   services are of the same, pre-license quality."  <u>Transgo, Inc. v.</u>

20   <u>Ajac Transmission Parts Corp.</u>, 768 F.2d 1001, 1017 (9th Cir. 1985);

21   <u>see also</u> <u>Stanfield v. Osborne Indus., Inc.</u>, 839 F. Supp. 1499, 1504

22   (D. Kan. 1993)(claiming that the Ninth Circuit, like most, requires

23   a licensor to "in fact exercised control over the licensee's

24   operations so as to ensure adequate quality"), <u>aff'd,</u> 52 F.3d 867

25   (10th Cir. 1995).

26        Without citing any evidence, Plaintiff argues that the Court

27   should find that he had given Defendants an implied license,

28

                                    11

1   claiming that the license should be inferred from their once
2   amicable relationship, and that because of this relationship
3   "throughout the years either Daniel Henderson, Randy Couture, or
4   both were well situated such that they could monitor quality
5   control of Defendants [*sic*] goods and services." (Memo. at 6:9-
6   11.) Some courts will not "require a formal system of quality
7   control" when the licensor and licensee have a "close association."
8   <u>Woodstock's Enterprises Inc. (California) v. Woodstock's</u>
9   <u>Enterprises Inc. (Oregon)</u>, 43 U.S.P.Q.2d 1440 (T.T.A.B. 1997).
10  However, even if the formalities are relaxed, being well situated
11  to exercise quality control is not the same as actually
12  "maintain[ing] control over the quality of the product." <u>See</u>
13  <u>Transgo, Inc. v. Ajac Transmission Parts Corp.</u>, 768 F.2d at 1017.
14  Plaintiff's implied license argument, thus, fails.

15      Plaintiff's reply brief also argues that Defendants cannot
16  argue laches because (1) allowing Defendants to continue using the
17  TQFC mark would injure the public, and (2) Defendants have unclean
18  hands. (Reply at 6:14-11:19.) Since these arguments were raised
19  for the first time in a reply brief, the Court will not address
20  them. <u>See Zamani v. Carnes</u>, 491 F.3d 990, 997 (9th Cir. 2007)
21  (affirming district court's decision to reject points raised for
22  the first time in reply). Therefore, the Court DENIES Plaintiff's
23  request to summarily adjudicate the laches issue.

24      Defendants have not moved for summary adjudication on laches.
25  Should Defendants move for summary adjudication on the laches
26  issue, they should also address Plaintiff's unclean hands and
27  public harm arguments. (<u>See</u> Reply at 6:14-11:19.) They should
28

1  also address and provide evidence as to whether Plaintiff gave

2  Defendants an implied license (e.g. evidence that Plaintiff did not

3  supervise the quality of Defendants' services).

4      **D. <u>Trademark Cancellation and Defendants' Federal Trademark</u>**

5      **<u>Counterfeiting Counterclaim</u>**

6      Plaintiff asks the Court to cancel Defendants' registered

7  trademarks,[2] because they are confusingly similar to Plaintiff's

8  TQFC marks.  (Memo. at 14:18-15:21.)   Marks registered fewer than

9  five years before being challenged may be cancelled if they are

10  likely to cause confusion with the senior user's mark.   McCarthy §

11  20:53; 15 U.S.C. §§ 11052(d), 1064.   However, Plaintiff has not

12  made a likelihood of confusion argument.   Since Plaintiff has not

13  argued likelihood of confusion, summary judgment on this issue is

14  inappropriate.

15      **E. <u>Defendants' Trademark Counterfeit Claim</u>**

16      Plaintiff argues that he cannot be guilty of trademark

17  counterfeiting, if the Court cancels Defendants' registered

18  trademarks.  (Memo. at 15:22-16:8.)   However, the Court is not

19  granting summary adjudication on the cancellation issue. Therefore,

20  Plaintiff's argument on the counterfeiting issue also fails.

21      **F. <u>Defendants' Copyright Counterclaim</u>**

22      Defendants counterclaim for copyright infringement.  (Amended

23  Answer and Counterclaims, Docket No. 43.)   Plaintiff claims that he

24  could not have infringed Defendants' copyrighted image ("the

25

26

27  _____

28  [2]Registration Nos. 3090065, 3085376, 3736030, and 3736031 (Memo. at 15: 15-16).

1  Copyrighted Image"),[3] because Defendants did not own the copyright

2  to the image.  (Memo. at 16:12-28.)  Defendants do not respond to

3  Plaintiff's copyright infringement argument.

4      To establish infringement, two elements must be proven: (1)

5  ownership of a valid copyright, and (2) copying of constituent

6  elements of the work that are original.  Feist Publications, Inc.

7  v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991).  Copyright

8  registration may be "prima facie evidence of the validity of the

9  copyright."  17 U.S.C. § 410(c). But registration only creates a

10  "rebuttable presumption" of validity.  A copyright claimaint can

11  apply to register a copyright.  37 C.F.R. § 202.3(c)(1).  A

12  copyright claimant is defined as "the author of a work" or "[a]

13  person or organization that has obtained ownership of all rights

14  under the copyright initially belonging to the author."  Id. at §

15  202.3(a)(3).

16      Plaintiff provides a declaration from David Kinsey ("Kinsey"),

17  who claims that he created Defendants' Copyrighted Image, and that

18  Jerry Suhrstedt ("Suhrstedt"), who sold the image to Defendants,

19  neither created nor owned the image.  (Kinsey Decl. ¶¶ 14-16,

20  (Docket No. 71-34.)  Attached to Kinsey's declarations are emails

21  between him and Suhrstedt.  In these emails, Kinsey expresses

22  displeasure that the images were sold, and suggests that Suhrstedt

23  did not have the authority to sell them.  (See id. at Exs. A, B.)

24      Defendants' copyright registration lists defendant Team Quest

25  Fight Club as the copyright claimant through "Transfer: By written

26  agreement".  (Welch Decl. Ex. B, Docket No. 71-46.)  The written

27  _____

28  [3]Registration no. VA0001790672

14

1  agreement that completed the transfer names Suhrstedt as the

2  "assignor." (Welch Decl. Ex. C, Docket No. 71-45.)  Plaintiff,

3  therefore, has presented evidence that Suhrstedt did not have

4  authority to transfer the Copyrighted Image to TQFC LLC, and

5  therefore TQFC LLC was not a proper copyright claimant. (Kinsey

6  Decl. ¶¶ 14-16, Ex. B.)  Since Team Quest Fight Club applied for

7  registration as a copyright claimaint, their registration was not

8  proper.  <u>Id.</u> at § 202.3(a)(3).  The registration is the only

9  evidence that Defendants own the Copyrighted Image.  Defendants'

10 bear the burden of proving their counterclaim for copyright

11 infringement, and they did not respond to Plaintiff's copyright

12 infringement argument.  The Court "need not examine the entire file

13 for evidence establishing a genuine issue of fact, where the

14 evidence is not set forth in the opposing papers with adequate

15 references so that it could conveniently be found." <u>Carmen</u>, 237

16 F.3d at 1031.  Plaintiff's unrebutted evidence and argument are

17 sufficient to show there is no genuine dispute that Defendants do

18 not own the Copyrighted Image.  Since they do not own the

19 Copyrighted Image, the Court grants summary adjudication and finds

20 that the Plaintiff did not commit copyright infringement.  <u>See</u>

21 <u>Feist</u>, 499 U.S. 340, 361 (1991).

22 **IV.** **<u>Conclusion</u>**

23      For the reasons discussed the Court GRANTS in part and DENIES

24 in part Plaintiff's Motion.   The Court GRANTS Plaintiff's Motion

25 as the following issues: (1) Plaintiff is the senior and continuous

26 user of the TQFC mark; and (2) Plaintiff is innocent of copyright

27 infringement.  The Court DENIES summary adjudication on the laches,

28

1    trademark cancellation, and trademark counterfeiting  issues.

2    Should another summary judgment motion be permitted, the parties

3    should strictly adhere to the local rules concerning the statements

4    of uncontroverted facts and genuine disputes.  C.D. Cal. L.R. 56-1

5    - 56-3.  The statement of uncontroverted facts should list facts

6    that, if undisputed, would be sufficient to grant summary judgment,

7    and each listed fact (in both statements) should cite supporting

8    admissible evidence.

9

10   IT IS SO ORDERED.

11

12

13   DATED: December 27, 2012

14                                    _____

15                                    Dean D. Pregerson
                                      United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28