O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DANIEL HENDERSON, an individual, | ) ) ) | Case No. CV 11-01350 DDP (DTBx) |
| Plaintiff, | ) ) | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S THIRD |
| v. | ) ) | MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY |
| MATTHEW LINDLAND, an | ) ) | JUDGMENT |
| individual; TEAM QUEST FIGHT CLUB,LLC, an Oregon limited | ) ) | [DOCKET NOS. 83 AND 85] |
| liability company, | ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

## I. **Background**

Plaintiff Daniel Henderson has sued Defendants Matthew Lindland and Team Quest Fight Club, LLC ("TQFC"), for five claims: (1) common law trademark infringement under Lanham Act § 43(a); (2) copyright infringement under 17 U.S.C. §§ 101, et seq.; (3) federal unfair competition under Lanham Act § 43(a); (4) common law unfair competition; and (5) California Unfair Competition under California Business & Professions Code § 17200.  (See generally Compl., Docket No. 1.)  Defendants have counterclaimed for (1) federal trademark infringement under Lanham Act § 32(1); (2) federal trademark

infringement, false designation of origin, passing off, and unfair
competition under Lanham Act § 43(a)(1)(A); (3) federal trademark
counterfeiting under Lanham Act §§ 32(1)(a) and 34(d); (4)
statutory unfair competition under California Business &
Professions Code § 17200; (5) deceptive advertising under
California Business & Professions Code § 17500; (6) common law
trademark infringement, unfair competition, and misappropriation;
(7) common law breach of contract; (8) common law covenant of good
faith and fair dealing; (9) intentional interference with
prospective economic advantage; and (10) copyright infringement.[1]
(See generally Amended Answer and Counterclaims, Docket No. 43.)

Presently before the Court is (1) Plaintiff's Third Motion for
Summary Judgment, or in the alternative, for an order treating
specified facts as established, and (2) Defendants' Motion for
Summary Judgment on Various Counts and Defenses.  The facts of the
case are familiar to the parties, and the Court has outlined them
before.  (Docket Nos. 67, 80.)  Plaintiff, Daniel Henderson is a
professional Mixed Martial Arts (MMA) fighter, who has started MMA
gyms.  The Court previously summarily adjudicated that he is the
senior and continuous user of the Team Quest mark, that he owns the
mark, and that he has priority in the mark.  (Docket Nos. 80, 100.)
Lindland is a retired MMA fighter.  Before Henderson started any
MMA gyms, Lindland founded one, TQFC, which is also a Defendant.
Henderson and Lindland were once friends.  Their relationship
soured in 2011, shortly before Henderson brought this suit.  Both

---

[1] Defendants' copyright infringement claim was previously summarily
adjudicated in Plaintiff's favor.  (Docket No. 80.)

1  have used Team Quest marks in their MMA-related services for over a

2  decade.  These marks are at the heart of this case.

3      The Court GRANTS summary judgment in favor of Plaintiff on the

4  following of his claims: trademark infringement under Lanham Act §

5  43(a), common law unfair competition, unfair competition under

6  California Business & Professions Code § 17200, and trademark

7  cancellation.  The Court GRANTS summary judgment in Defendants'

8  favor on the laches issue.  The Court DENIES Summary Judgment on

9  Defendants' first through fourth counterclaims, and notes that

10  these claims have been abandoned.  All other claims and

11  counterclaims have, likewise, been abandoned.

12  **II.** **Legal Standard on Summary Judgment**

13      Summary judgment shall be granted when a movant "shows that

14  there is no genuine dispute as to any material fact and the movant

15  is entitled to judgment as a matter of law."  FED. R. CIV. P.

16  56(a).  In other words, summary judgment should be entered "against

17  a party who fails to make a showing sufficient to establish the

18  existence of an element essential to that party's case, and on

19  which that party will bear the burden of proof at trial."  Parth v.

20  Pomona Valley Hosp. Med. Ctr., 630 F.3d 794, 798-99 (9th Cir.

21  2010)(internal quotation marks omitted).

22      To satisfy its burden at summary judgment, a moving party must

23  produce facts on each element for which it has the burden of proof

24  at trial "sufficient for the court to hold that no reasonable trier

25  of fact could find other than for the moving party."  Calderone v.

26  United States, 799 F.2d 254, 259 (6th Cir. 1986) (emphasis

27  omitted).  A moving party without the burden of persuasion "must

28  either produce evidence negating an essential element of the

nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." _Nissan Fire & Marine Ins. Co., v. Fritz Cos., Inc._, 210 F.3d 1099, 1102 (9th Cir. 2000); _see also_ _Devereaux v. Abbey_, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting _Celotex Corp. v. Catrett_, 477 U.S. 317, 325 (1986), and citing _Fairbank v. Wunderman Cato Johnson_, 212 F.3d 528, 532 (9th Cir. 2000) (holding that the _Celotex_ "showing" can be made by "pointing out through argument– the absence of evidence to support plaintiff's claim")).

It is not enough for a party opposing summary judgment to "rest on mere allegations or denials of his pleadings." _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 259 (1986). Instead, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. _Celotex_, 477 U.S. at 325.

At the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and views all evidence and draws all inferences in the light most favorable to the non-moving party. _See_ _id._ at 630-31 (citing _Matsushita Elec. Indus. Co., v. Zenith Radio Corp._, 475 U.S. 574, 587 (1986)); _see also_ _Hrdlicka v. Reniff_, 631 F.3d 1044 (9th Cir. 2011); _Miranda v. City of Cornelius_, 429 F.3d 858, 860 n.1 (9th Cir. 2005). Speculative testimony in affidavits and motion papers is insufficient to raise genuine issues of fact and defeat summary judgment. _Thornhill Publ'g Co., v. GTE Corp._, 594 F.2d 730, 738

1  (9th Cir. 1979).  As the Supreme Court has stated, "[t]he mere
2  existence of a scintilla of evidence . . . will be insufficient;
3  there must be evidence on which the jury could reasonably find for
4  the [non-moving party]."  Anderson v. Liberty Lobby, Inc., 477 U.S.
5  242, 252 (1986).

6      It is not the Court's task "to scour the record in search of a
7  genuine issue of triable fact."  Keenan v. Allan, 91 F.3d 1275,
8  1279 (9th Cir. 1996). Counsel has an obligation to lay out their
9  support clearly. Carmen v. San Francisco Unified Sch. Dist., 237
10  F.3d 1026, 1031 (9th Cir. 2001).  The Court "need not examine the
11  entire file for evidence establishing a genuine issue of fact,
12  where the evidence is not set forth in the opposing papers with
13  adequate references so that it could conveniently be found."  Id.
14  **III.** **Analysis**

15      A. **Plaintiff's Trademark Infringement Claims are Entitled to**
16         **Summary Judgment**

17      Plaintiff has filed for summary judgment on his trademark
18  infringement claims.  Plaintiff's Complaint makes clear that its
19  common law infringement claim is under section 43(a) of the Lanham
20  Act, and his Motion indicates that his unfair competition claim
21  under that section is really an infringement claim: "Thus in suing
22  under § 43(a) for infringement . . ."  (Compl. at 9:1-3; Docket No.
23  85 at 16:9).  Plaintiff also moves for summary judgment under
24  common law unfair competition and statutory unfair competition.
25  Courts "jointly analyze[]" trademark infringement and statutory and
26  common law unfair competition claims.  Wecosign, Inc. v. IFG
27  Holdings, Inc., 845 F. Supp. 2d 1072, 1079 (C.D. Cal. 2012).  They
28  do so because the Ninth Circuit "has consistently held that state

common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." <u>Cleary v. News Corp.</u>, 30 F.3d 1255, 1262-63 (9th Cir. 1994) (citation omitted).

"Section 43(a)(1) [of the Lanham Act] provides similar protection to trademarks regardless of registration." <u>Bell v. Harley Davidson Motor Co.</u>, 539 F. Supp. 2d 1249, 1254 (S.D. Cal. 2008) (citing <u>Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.</u>, 174 F.3d 1036, 1046 n.6 (9th Cir. 1999)). "To establish a trademark infringement claim . . ., [Plaintiff] must establish that [Defendant] is using a mark confusingly similar to a valid, protectable trademark of [Plaintiff's]." <u>Brookfield Commc'ns</u>, 174 F.3d at 1046. "To show that he has a protectable trademark interest, Plaintiff must have been the first to use the mark in the sale of goods or services." <u>Guichard v. Universal City Studios, LLLP</u>, No. C 06-6392 JSW, 2007 WL 1750216, at *2 (N.D. Cal. June 15, 2007) <u>aff'd sub nom. Guichard v. Universal City Studios LLLP</u>, 261 F. App'x 15 (9th Cir. 2007). This Court has already decided Plaintiff is the senior and continuous user of the Team Quest mark. (Docket No. 80.)[2] Accordingly, the Court now moves to the likelihood of confusion analysis.

///

---

[2]Defendants' only argument in response to Plaintiff's infringement-related claims is: "Defendants request that the Court grant summary judgment that Defendants have priority with respect to the Team Quest marks." (Docket No. 83-1 at 13:10-11.) The Court has already decided the priority issue in Plaintiff's favor. (Docket Nos. 80, 100.) Whatever the merits of Defendants' new arguments and evidence (especially Randy Couture's autobiography) in support of their priority, they should have presented them in the prior summary judgment motion. (<u>See</u> Docket No. 100 (denying reconsideration of the Court's finding on summary judgment that Plaintiff has priority).)

1          **1. Likelihood of Confusion**

2      The factors for determining likelihood of confusion are:

3          1. strength of the mark;

4          2. proximity of the goods;

5          3. similarity of the marks;

6          4. evidence of actual confusion;

7          5. marketing channels used;

8          6. type of goods and the degree of care likely to be

9          exercised by the purchaser;

10         7. defendant's intent in selecting the mark; and

11         8. likelihood of expansion of the product lines.

12 AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979).

13 It is unnecessary to meet every factor, because the likelihood of

14 confusion test is "fluid". Surfvivor Media, Inc. v. Survivor

15 Prods., 406 F.3d 625, 631 (9th Cir. 2005).

16     Defendants do not respond to Plaintiff's argument that there

17 is a likelihood of confusion. The Court finds that there is a high

18 likelihood of confusion.  Both parties use the names Team Quest as

19 marks.  Both often pair the words "Team Quest" with an image of a

20 clenched fist.  (Compare Second Henderson Decl. Exs. F-I, with

21 Wright Ex. D.)  Although Defendants were the first to use the Team

22 Quest mark for MMA-gym related services, Plaintiff used the marks

23 for MMA-entertainment services before Defendants began using them

24 in commerce.  (Second Henderson Decl. ¶¶ 9-12 and Exs. F-I; Docket

25 No. 100 (explaining that April 2001 was when Defendants began using

26 the mark in commerce, and that Plaintiff used it before).)

27 Moreover, TQFC was especially connected to the world of

28 professional MMA fighting.  Not only were a number of its founders

7

1    professional fighters, but TQFC "attracted mixed martial arts

2    fighters from around the country who came to prepare for fights and

3    to assist with training camps at the professional and student

4    levels."  (Follis Decl. ¶ 6.)

5        Finally, "Team Quest" is an arbitrary mark because it has an

6    arbitrary link to MMA services.  See <u>Official Airline Guides, Inc.</u>

7    <u>v. Goss</u>, 6 F.3d 1385, 1390 (9th Cir. 1993) ("An arbitrary mark

8    consists of common words arranged in an arbitrary way that is

9    non-descriptive of any quality of the goods or services."); <u>Cf.</u>

10   <u>Stork Rest. Inc. v. Sahati</u>, 166 F.2d 348, 355 (9th Cir. 1948)

11   (finding that "The Stork Club" was an arbitrary mark for a

12   nightclub.).  Arbitrary marks are considered strong.  <u>E. & J. Gallo</u>

13   <u>Winery v. Gallo Cattle Co.</u>, 967 F.2d 1280, 1291 (9th Cir. 1992)

14   (holding that an "arbitrary" mark is "awarded maximum protection").

15   Accordingly, this factor favors finding a likelihood of confusion.

16       For the reasons stated above, and because Defendants do not

17   address the likelihood of confusion issue, the Court finds that

18   there is a substantial likelihood of confusion.

19       **B. <u>Defendants Are Entitled to Laches, But Only for Damages</u>**

20       Defendants argue that even if they have committed trademark

21   infringement, they are entitled to laches. "'Laches is an equitable

22   time limitation on a party's right to bring suit,' resting on the

23   maxim that 'one who seeks the help of a court of equity must not

24   sleep on his rights.'" <u>Jarrow Formulas, Inc. v. Nutrition Now,</u>

25   <u>Inc.</u>, 304 F.3d 829, 835 (9th Cir. 2002) (citations omitted).

26   Defendants, who assert laches, must prove that  "(1) [Plaintiff's]

27   delay in filing suit was unreasonable, and (2) [Defendants] would

28   suffer prejudice caused by the delay if the suit were to continue."

1  Id. at 838.  The Ninth Circuit has also "set out six factors for

2  determining whether laches bars a claim for either damages or

3  injunctive relief in an action for trademark infringement." Grupo

4  Gigante SA De CV v. Dallo & Co., 391 F.3d 1088, 1102 (9th Cir.

5  2004).  These factors include:

6      1. strength and value of trademark rights asserted;

7      2. plaintiff's diligence in enforcing mark;

8      3. harm to senior user if relief denied;

9      4. good faith ignorance by junior user;

10     5. competition between senior and junior users; and

11     6. extent of harm suffered by junior user because of senior

12     user's delay.

13  Id. at 1102.

14     "The limitations period for laches starts 'from the time the

15  plaintiff knew or should have known about its potential cause of

16  action.'" Tillamook Country Smoker, Inc. v. Tillamook Cnty.

17  Creamery Ass'n, 465 F.3d 1102, 1108 (9th Cir. 2006) (citation

18  omitted).  Plaintiff claims trademark infringement under the Lanham

19  Act, and infringement-like claims under state unfair competition

20  laws.  Although the Lanham Act does not have a statute of

21  limitations, courts look to the "most closely analogous action

22  under state law" for guidance in determining the applicability of

23  laches. RSI Corp. v. Int'l Bus. Machs. Corp., No. 5:08-cv-3414

24  RMW, 2012 WL 3277136, at *13 (N.D. Cal. Aug. 9, 2012) (quoting

25  Jarrow Formulas, 304 F.3d at 836) (internal quotation marks

26  omitted).  "If the plaintiff files suit within the limitations

27  period for the analogous state action, it is presumed that laches

28  does not apply; the presumption is reversed if the plaintiff files

1    suit after the analogous limitations period has expired."  <u>Id.</u>  At

2    least one district court in this Circuit has found that the

3    relevant limitations period for federal trademark infringement and

4    unfair competition claims is four years.  <u>See</u> <u>id.</u>

5        **1. <u>Undue Delay</u>**

6        Courts look to the party against whom laches is asserted to

7    explain the delay.  <u>See</u> <u>Danjaq LLC v. Sony Corp.</u>, 263 F.3d 942, 954

8    (9th Cir. 2001) ("McClory has presented no sufficient justification

9    for his delay.").  There are a number justifications for delay.

10   <u>See</u> <u>id.</u> at 954-55 (giving examples).  Plaintiff argues that there

11   was no undue delay, because he and Lindland had an amicable

12   relationship until 2011 and he and his co-senior user Randy Couture

13   gave Defendants an implied license to use the Team Quest mark.

14   Plaintiff cites no cases where friendship alone was found to be a

15   sufficient reason for delaying a trademark action.

16       Plaintiff's second justification has more solid legal

17   grounding.  There can be no trademark infringement if a defendant

18   has an implied license to use a trademark.  J. Thomas McCarthy,

19   McCarthy on Trademarks and Unfair Competition ("McCarthy"), §

20   18:43.50 (4th ed. 2012); <u>see</u> <u>Dep't of Parks & Recreation for</u>

21   <u>California v. Bazaar Del Mundo Inc.</u>, 448 F.3d 1118, 1129 (9th Cir.

22   2006) (describing an implied license as a defense to trademark

23   infringement).  If Plaintiff gave Defendants an implied license,

24   they were not infringing, and Plaintiff, thus, did not delay in

25   bringing this lawsuit.  To show an implied license there must be

26   "evidence of an agreement or course of conduct by the parties to

27   contract for a trademark license."  <u>Bazaar Del Mundo</u>, 448 F.3d at

28   1130.  In order for a court to find the existence of an implied

1    license, it is imperative for a licensor to have "maintain[ed]

2    control over the quality of the finished product or service to

3    guarantee to the public that the goods or services are of the same,

4    pre-license quality."  Transgo, Inc. v. Ajac Transmission Parts

5    Corp., 768 F.2d 1001, 1017 (9th Cir. 1985); see also Stanfield v.

6    Osborne Indus., Inc., 839 F. Supp. 1499, 1504 (D. Kan.

7    1993)(claiming that the Ninth Circuit, like most, requires a

8    licensor to "in fact exercise[] control over the licensee's

9    operations so as to ensure adequate quality"), aff'd, 52 F.3d 867

10   (10th Cir. 1995).

11       Plaintiff presents no evidence that he exercised quality

12   control over Defendants.  In fact, "as of December 2004, Henderson

13   did not have an ownership interest in [TQFC]".  (Defendants'

14   Statement of Uncontroverted Facts ("SUF") at 4: 19-21, Docket No.

15   88.)[3]  Although Randy Couture, a co-senior user, used to be a part

16   owner of TQFC, Plaintiff presents no evidence that Couture

17   exercised quality control over TQFC.  Regardless, Couture

18   "surrender[ed] all interest" in TQFC in March 2006, nearly five

19   years before Plaintiff brought this action.  (Follis Decl., Ex. F

20   at 2 of 4, Docket No. 19) (filed under seal).  Additionally,

21   Defendants have presented unrebutted evidence that they were not

22   operating under Plaintiff's control or using the Team Quest marks

23   pursuant to Plaintiff's permission.  For example, in 2010 Plaintiff

24   "request[ed] that Lindland sign a license agreement on behalf of

25

26

---

27       [3]The Court only references portions of Defendants' SUF that Plaintiff did
28   not controvert in his Statement of Genuine Disputes.  Pursuant to the Local
     Rules, Plaintiff concedes all such uncontroverted facts.  C.D. Cal. L.R. 56-3.

1  TQFC, allowing a video game manufacturer . . . to use the [Team

2  Quest] marks."  (Defendants' SUF at 5:25-28.)

3          **2. <u>Prejudice</u>**

4      There are "various sorts" of prejudice that are sufficient for

5  asserting laches.  <u>Danjaq</u>, 263 F.3d at 955.  One of them is

6  "expectations-based" prejudice.  <u>Id.</u>  Expectations-based prejudice

7  may occur when an infringer has "invested money to expand its

8  business or entered into business transactions based on his

9  presumed rights."  <u>Miller v. Glenn Miller Prods</u>, 318 F. Supp. 2d

10  923, 944 (C.D. Cal. 2004) <u>aff'd</u>, 454 F.3d 975 (9th Cir. 2006).

11  "[C]ontinuing investments and outlays by the alleged infringer in

12  connection with the operation of its business" is sufficient for

13  showing prejudice.  <u>Danjaq</u>, 263 F.3d at 955 (9th Cir. 2001)

14  (citation omitted).  Over the course of more than a decade,

15  Lindland and his family have built a business, TQFC, that bears the

16  Team Quest name.  (Angela Lindland Decl. ¶¶ 1-2, Docket No. 83-3.)

17  He has bought out co-owners to make the business his own.  (<u>See,</u>

18  <u>e.g.,</u> Follis Decl. Ex. F.)  Plaintiff, therefore, risks suffering

19  classic expectations-based prejudice.

20          **3. <u>Other Factors</u>**

21      Courts are also instructed to analyze the following factors in

22  deciding laches within the context of trademark infringement: 1.

23  strength and value of trademark rights asserted;  2. plaintiff's

24  diligence in enforcing mark; 3. harm to senior user if relief

25  denied; 4. good faith ignorance by junior user; 5. competition

26  between senior and junior users; and 6. extent of harm suffered by

27  junior user because of senior user's delay. <u>Grupo Gigante</u>, 391 F.3d

28  at 1102. Because the sixth factor is so related to the Court's

discussion of prejudice, it is found to weigh in favor of laches. Similarly, the Court's earlier analysis of the relatedness of the parties' MMA services bears strongly on the fifth factor, and it, thus, weighs against laches.

The first, third, and fifth factors weigh against laches. Defendants do not address these factors.  The strength and value of the mark is the first factor.  Grupo Gigante, 391 F.3d at 1102. For the reasons discussed in the likelihood of confusion analysis, Team Quest is an arbitrary mark, and arbitrary marks are considered strong.  E. & J. Gallo Winery, 967 F.2d at 1291 (finding that an "arbitrary" mark is "awarded maximum protection") (internal quotation marks omitted).  This factor thus weighs against laches.

As to the third factor, "[t]he question of whether a senior user will be harmed if relief is denied turns largely on the court's analysis of the likelihood of confusion." RSI, 2012 WL 3277136, at *18 (citing Grupo Gigante, 391 F.3d at 1103.)  As discussed above, the likelihood of confusion is high.  Indeed, Defendants do not argue otherwise.

The second, fourth, and sixth factors favor laches.  The second factor is Plaintiff's diligence in enforcing the mark. Grupo Gigante, 391 F.3d at 1102. Plaintiff does not claim to have enforced his rights in the Team Quest mark against anyone other than Defendants.  For the reasons discussed in the analysis of Plaintiff's undue delay, this factor weighs in favor of laches.

The fourth factor is Defendants' good faith ignorance.  Id. Plaintiff only argues, but cites no evidence that Defendants were not acting in good faith.  (Docket No. 94 at 10:1-23.)  Plaintiff presents no evidence that he informed Defendants of his priority

13

1  rights in the Team Quest mark before 2011, when he brought this
2  suit.  In fact, as noted above, he asked Plaintiff for permission
3  to use the marks in a video game.[4]

4          **4. <u>Remedy</u>**

5          Laches may be applied even if all the factors do no weigh in
6  Defendant's favor.  <u>Grupo Gigante</u>, 391 F.3d at 1104-05 (granting a
7  laches defense even though one factor weighed "heavily" in the
8  plaintiff's favor and another was a "close one").  Laches is
9  especially likely to bar an injunction when the parties have
10 previously had a friendly relationship, and when for a substantial
11 period of time, the plaintiff did nothing to indicate disapproval
12 of the defendant's use of the mark.  McCarthy § 31:7, n.7
13 (discussing "plus factors" that courts often emphasize in applying
14 laches to deny an injunction).  Because of Plaintiff's long delay,
15 Lindland's substantial investment in his business which has borne
16 the name "Team Quest" for over a decade, and because of the plus
17 factor just discussed, the Court finds that laches bars trademark
18 infringement-related claims against Defendants.

19         Plaintiff urges the Court to allow an injunction, arguing that
20 laches will not prevent the issuance of an injunction when customer

21

22 _____

          [4]For similar reasons, Plaintiff cannot successfully argue that Defendants
23 have unclean hands.  Plaintiff's argument here is unclear.  "A party with
   unclean hands may not assert laches."  <u>Jarrow Formulas</u>, 304 F.3d at 841.  A
24 party acting in fraud or deceit has unclean hands.  <u>Id.</u>  Plaintiff argues that
   Defendants falsely asserted that they had legal rights to the Team Quest marks
25 in their trademark registration application.  Plaintiff's argument seems to
   relate more to whether the registration was proper, not whether Defendants'
26 longstanding use of the Team Quest mark, which predates Defendants' registration
   application by several years, is entitled to protection under laches.
27 Regardless, for the reasons discussed above, no evidence suggests Lindland knew
   he did not own the Team Quest marks.

28

1   confusion between the marks is inevitable.  (Docket No. 85 at

2   22:21-24:9.)  However, it is only in a "narrow set of

3   circumstances" in which "inevitable confusion . . . will defeat a

4   successful laches defense."  <u>Tillamook</u>, 465 F.3d at 1111.  As the

5   Ninth Circuit has held, "the public's interest will trump laches

6   only when the suit concerns allegations that the product is harmful

7   or otherwise a threat to public safety and well being."  <u>Id.</u>

8   (citation omitted).  Since Plaintiff does not make such

9   allegations, he has not shown that his claim fits within the narrow

10  set of circumstances in which inevitable confusion is relevant.

11  <u>Id.</u>; (<u>see</u> Docket No. 85 at 22:21-24:9 (arguing that consumers are

12  generally harmed when they are confused, not that Plaintiffs

13  services and products are harmful or a danger to public safety).

14          **C. <u>Defendants' Trademarks Will Be Cancelled</u>**

15          Plaintiff asks the Court to cancel Defendants' registered

16  trademarks.[5]  When priority is established, cancellation may be

17  appropriate if the marks are similar. <u>Russell Chem. Co. v.</u>

18  <u>Wyandotte Chems. Corp.</u>, 337 F.2d 660, 661 (C.C.P.A. 1964);

19  <u>Cunningham v. Laser Golf Corp.</u>, 222 F.3d 943, 945 (Fed. Cir. 2000).

20  Marks registered fewer than five years before being challenged may

21  be cancelled if they are likely to cause confusion with the senior

22  user's mark.  McCarthy § 20:53; 15 U.S.C. §§ 1052(d), 1064.

23  Defendants' primary argument against cancellation is essentially

24  that Plaintiff is not the senior and continuous user of the Team

25  Quest marks.[6]  As discussed, the Court has previously decided that

26  _____

27          [5] Registration Nos. 3090065, 3085376, 3736030, and 3736031.

28          [6]Defendants' other argument is that it should be able to keep its
                                                        (continued...)

1   Plaintiff is, and has now decided that there is a likelihood of
2   confusion.

3       Additionally, Defendants' infringement-based laches argument
4   is inapplicable to Plaintiff's cancellation claim.  In the context
5   of registration cancellation, laches is only appropriate when a
6   senior user has unduly delayed objecting to the junior user's
7   registration, not to the use.  "As applied in trademark opposition
8   or cancellation proceedings, [laches] must be tied to a party's
9   registration of a mark, <u>not</u> to a party's use of the mark.  <u>Lincoln</u>
10  <u>Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc.</u>, 971 F.2d 732, 734
11  (Fed. Cir. 1992) (emphasis in original); <u>see also</u> <u>Tillamook Country</u>
12  <u>Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n.</u>, 333 F. Supp. 2d
13  975, 981 (D. Or. 2004) <u>aff'd</u>, 465 F.3d 1102 (9th Cir. 2006).

14      Defendants' most senior registered mark was registered on
15  April 25, 2006.  (<u>See generally</u> Wright Decl. Ex. D.)  Plaintiff
16  commenced this suit in February 2011, fewer than five years after
17  any of Defendants' marks were registered.  (<u>See</u> Compl.)  Because
18  Plaintiff initiated this suit within the five-year window, and has
19  priority, and because there is a likelihood of confusion, the
20  registrations are cancelled.
21  ///
22  ///
23
24      [6](...continued)
25  registration pursuant to 15 U.S.C. § 1055.  However, this statute stands for the
    notion that "properly licensed use by licensees will serve to fortify the legal
26  and commercial strength of the licensed mark."  Mccarthy § 18:45.50.  It is
    unclear what relevance this statute has to Plaintiff's cancellation claim.
27  Defendants do not explain the relevance, nor do they cite any cases for their
    position. The local rule require moving papers to contain "[a] brief but
28  complete memorandum in support thereof and the points and authorities upon which
    the moving party will rely."  C.D. Cal. L.R. 7-5.

1    **D. <u>Defendants and Plaintiff Have Abandoned Claims and</u>**

2    **<u>Counterclaims</u>**

3        The Court previously ordered the parties to move for summary

4    judgment on each claim, counterclaim, and affirmative defense that

5    remains in the case. (Docket No. 81.)  The Court ordered that

6    failure to so move would be construed as abandonment.  (<u>Id.</u>)

7    Plaintiff failed to move for summary judgment on his copyright

8    claim, so it is abandoned.  (<u>See generally</u>, Docket No. 85.)

9    Similarly, Defendants' moving papers make no mention of their

10   seventh and ninth counterclaims for common law breach of contract

11   and intentional interference with prospective economic advantage.

12   (<u>See generally</u> Docket No. 83-1.)  Accordingly, they have been

13   abandoned.

14       **E. <u>Defendants' Effectively Abandoned Claims</u>**

15       Defendants have essentially abandoned all of their remaining

16   counterclaims, because they provide only a cursory argument in

17   favor of summary judgment for these counterclaims.  (Docket No. 83-

18   1 at 14:16-16:5.)  This argument does not comply with the local

19   rules, which require "[a] brief but complete memorandum in support

20   [of the motion] and the points and authorities upon which the

21   moving party will rely."  C.D. Cal. L.R. 7-5.  The Court required

22   Defendants to move for summary judgment on all their remaining

23   counterclaims. The approximately 1.6 pages they devote to their

24   counterclaims fall beneath what the Local Rules expect for several

25   reasons.

26   ///

27   ///

28   ///

17

1     First, it is unclear what claims Defendants have moved for.
2  The relevant heading in Defendants' brief asserts that summary
3  judgment is appropriate under the first through sixth and eighth
4  counterclaims.   (Docket No. 83-1 at 14:13-15.)   However, the final
5  sentence of that section indicates that Defendants only seek
6  summary judgment on the first through fourth counterclaims.   Id. at
7  16:5.   Defendants' brief does not name the actual counterclaims on
8  which summary adjudication is sought.   Defendants only refer to the
9  counterclaims by the order in which they appear in their Amended
10  Answer and Counterclaims.
11     It is in their reply brief that Defendants state they seek
12  summary judgment on their unfair trademark infringement, unfair
13  competition, counterfeiting, and breach of good faith and fair
14  dealing counterclaims.   These relate to Defendants' first, third
15  through sixth, eighth, and only part of Defendants' second
16  counterclaims.   (See generally Amended Answers and Counterclaims,
17  Docket No. 43.)   Waiting until the Reply Brief to clarify the
18  claims on which summary judgment is sought creates due process
19  concerns, and the Court need not consider arguments raised for the
20  first time in a reply brief.   See Zamani v. Carnes, 491 F.3d 990,
21  997 (9th Cir. 2007) (affirming district court's decision to reject
22  points raised for the first time in reply).   In light of the
23  ambiguities noted above, Defendants at best provided sufficient
24  notice that they moved for summary judgment on their first through
25  fourth counterclaims: (1) federal trademark infringement under
26  Lanham Act § 32(1); (2) federal trademark infringement, false
27  designation of origin, passing off, and unfair competition under
28  Lanham Act § 43(a)(1)(A); (3) federal trademark counterfeiting

1 under section Lanham Act §§ 32(1)(a) and 34(d); and (4) statutory

2 unfair competition under California Business & Professions Code §

3 17200.  (Docket No. 43.)

4      Defendants cite <u>Century 21 Real Estate Corp. v. Sandlin</u>, 846

5 F.2d 1175 (9th Cir. 1988) for the proposition that: "Indeed,

6 continued use of the mark by the former licensee constitutes a

7 fraud on the public, as the public is led to believe the continued

8 use is authorized by the trademark owner."  (Docket No. 83-1 at

9 15:19-22; Docket No. 96 at 8:5-8.)  Defendants fail to explain how

10 such a holding is sufficient legal authority–as the local rule

11 requires them to provide–for granting summary judgment on all four

12 of their counterclaims.  C.D. Cal. L.R. 7-5.  Moreover, Defendants'

13 argument seems, again, to not recognize that the Court previously

14 found Plaintiff to be the senior and continuous user of the Team

15 Quest marks.  Plaintiff has priority, and thus is the owner, not a

16 licensee.  "It is axiomatic . . . that the standard test of

17 ownership is priority of use."  <u>Brookfield Commc'ns</u>, 174 F.3d at

18 1047 (citation omitted).

19 **IV. <u>Conclusion</u>**

20      The Court GRANTS summary judgment in favor of Plaintiff on the

21 following of his claims: trademark infringement under Lanham Act §

22 43(a), common law unfair competition, unfair competition under

23 California Business & Professions Code § 17200, and trademark

24 cancellation.  The Court GRANTS summary judgment in Defendants'

25 favor on the laches issue.  The Court DENIES summary Judgment on

26 ///

27

28

1  Defendants' first through fourth counterclaims, and these claims

2  are construed to have been abandoned anyway.  All other claims and

3  counterclaims are deemed to have been abandoned.

4  IT IS SO ORDERED.

5

6

7  Dated:March 21, 2013

                                        DEAN D. PREGERSON
8                                       United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28